STATE OF NORTH CAROLINA v. JERRY RAY CUMMINGS

No. 65A87-3

(Filed 6 October 2000)

**1. Prisons and Prisoners— defendant's prison records—no prosecutorial misconduct**

The State did not engage in prosecutorial misconduct in a capital sentencing proceeding by subpoenaing defendant's prison records and by disclosing those records during cross-examination of witnesses, because: (1) N.C.G.S. § 148-76 provides that these records shall be made available to the State; (2) defense counsel did not object to the subpoena at trial, but instead requested that defense counsel be given copies of all prison records received by the State; and (3) the record does not reveal any inappropriate references by the State to defendant's prison records.

**2. Constitutional Law— right to be present at all stages— preliminary qualifications of prospective jurors**

The trial court did not err by excusing several prospective jurors outside of defendant's presence in a capital sentencing proceeding, because: (1) defendant's right to be present at all stages of his trial does not include the right to be present during preliminary handling of the jury venires before defendant's own case has been called; and (2) the record reveals that prospective jurors with justifications for excusal from jury duty on the day defendant's case was called for trial were excused before the State called defendant's case.

**3. Jury— selection—capital sentencing—aggravating circumstances used—plain error inapplicable**

Although defendant asserts plain error to the prosecutor's use of examples of aggravating circumstances during the voir dire of prospective jurors which were not relied on in defendant's capital sentencing proceeding, the plain error doctrine does not apply to situations where a party has failed to object to statements made by the other party during jury voir dire, and defendant's failure to raise this issue at trial constitutes waiver under N.C. R. App. P. 10(b)(2).

STATE v. CUMMINGS

[352 N.C. 600 (2000)]

**4. Jury— challenge for cause—opposition to death penalty**

The trial court did not abuse its discretion by excusing a prospective juror for cause based on her opposition to the death penalty in a capital sentencing proceeding because: (1) the prospective juror stated that she felt her personal beliefs would prevent her from being able to consider the death penalty; and (2) defendant did not take the opportunity to explore and elicit the prospective juror's views further.

**5. Discovery— reciprocal—expert's raw data**

The trial court did not err by ordering reciprocal discovery of raw data from defendant's expert witnesses in a capital sentencing proceeding because: (1) N.C.G.S. § 15A-905(b), governing the reciprocal discovery provisions applicable to criminal proceedings, provides that the State was entitled to this information; and (2) defense counsel stated that defendant did not object to copies of the data being provided to the State and, in fact, initiated the discussion of a court order compelling discovery.

**6. Criminal Law— prosecutor's argument—parole—defendant's future dangerousness**

The trial court did not commit plain error in a capital sentencing proceeding by allowing the State to interject the issues of parole and defendant's future dangerousness during opening statements, cross-examination of defendant, and cross-examination of two witnesses, because: (1) no evidence suggested that the prosecutor attempted to connect defendant's prior record and prior parole eligibility to improper parole considerations with respect to sentencing in this case; (2) the prosecutor did not imply that parole was a possibility in the instant case if the death sentence was not imposed; (3) the prosecutor's only reference to parole was in regard to defendant's 1966 life sentence for murder, from which defendant was paroled, and defendant opened the door to cross-examination on these issues by testifying about his previous life sentence and parole on direct examination; and (4) a prosecutor may urge the jury to recommend death out of concern for the future dangerousness of defendant.

**7. Evidence— defendant's prior statement—recross-examination**

The trial court did not abuse its discretion in allowing the State to conduct recross-examination of defendant concerning

defendant's statement that he was so drunk that he did not remember shooting and killing his uncle in 1966, and his statement that he had no memory of the killing of the victim in this case, because the questions were within the appropriate scope based on defendant's statements on redirect that he shot his uncle, and that he did not kill the victim in this case.

### 8. Evidence— expert testimony—voir dire—basis of opinion

The trial court did not err by allowing the State, without objection from defendant, to conduct a voir dire of a defense witness regarding the basis of his opinions prior to the witness being qualified as an expert in a capital sentencing proceeding because: (1) the voir dire occurred entirely outside the presence of the jury; (2) the plain error doctrine does not extend to statements made without objection outside of the presence of the jury during witness voir dire; and (3) defendant's failure to raise this issue during trial constitutes waiver under N.C. R. App. P. 10(b)(2).

### 9. Evidence— expert testimony—cross-examination—expert fees

The trial court did not abuse its discretion by allowing the State to cross-examine a defense witness concerning his fees, because: (1) an expert's compensation is a permissible cross-examination subject to test partiality; and (2) the record does not reveal that the question was asked in bad faith.

### 10. Evidence— defendant's prison records—cross-examination

The trial court did not commit plain error by allowing the State to cross-examine a witness with documents in defendant's prison records which were alleged to be not properly introduced into evidence, because defendant agreed to the admissibility of these documents before trial based on the parties stipulating that the documents were competent and admissible into evidence upon motion by either party.

### 11. Criminal Law— prosecutor's argument—victim's last thoughts

The trial court did not abuse its discretion by failing to intervene ex mero motu during the prosecutor's closing argument concerning the victim's last thoughts, because there is no impropriety when the prosecutor asks the jury to imagine the fear and emotions of a victim.

STATE v. CUMMINGS

[352 N.C. 600 (2000)]

**12. Criminal Law— prosecutor's argument—callousness of killing—future dangerousness of defendant**

The trial court did not abuse its discretion by failing to intervene ex mero motu during the prosecutor's closing argument concerning the callousness of the killing, the fact that defendant will be dangerous in the future, and that the State would like to give these factors as aggravating circumstances but it cannot, because: (1) the statement was a fair synopsis of these aspects of the case, and the prosecutor made clear to the jury that the only aggravating circumstance relevant to defendant's case was his prior capital felony conviction; (2) the prosecutor did not misstate the law and ask the jury to find aggravating circumstances which are not included in N.C.G.S. § 15A-2000(e); and (3) the trial court properly instructed the jurors on the one aggravating circumstance and jurors are presumed to follow the trial court's instructions.

**13. Criminal Law— prosecutor's argument—catchall mitigating circumstance**

Although defendant did not object and now contends the prosecutor provided an inaccurate explanation of the catchall mitigating circumstance under N.C.G.S. § 15A-2000(f)(9) during closing arguments of a capital sentencing proceeding in order to diminish the importance of mitigation and denigrate the list of nonstatutory mitigating circumstances, the trial court's failure to intervene did not amount to gross impropriety because: (1) the prosecutor specifically stated the mitigators offered by defendant had to be acceptable under the law; and (2) the prosecutor's arguments may legitimately attempt to minimize the significance of the mitigating circumstances.

**14. Criminal Law— prosecutor's argument—defendant's background factors not mitigating circumstances**

Even assuming arguendo that the prosecutor improperly argued during closing arguments of a capital sentencing proceeding that factors such as defendant's difficult childhood, alcoholism, and low IQ were not mitigating circumstances and could not be considered mitigating evidence by the jurors, any minimization of mitigating circumstances or confusion regarding their definition and purpose was clarified and corrected by the trial court immediately following arguments, and jurors are presumed to follow the trial court's instructions.

**15. Criminal Law— prosecutor's argument—favorable diagnosis was reason defense expert hired**

The trial court did not err in failing to intervene ex mero motu during the prosecutor's closing arguments stating that the defense expert was hired and paid by defendant for his favorable diagnosis and that the expert had testified only for defendants, because: (1) the prosecution is allowed wide latitude in its arguments and is permitted to argue not only the evidence presented, but also all reasonable inferences which can be drawn from the evidence; and (2) the prosecutor's statements were fully supported by direct evidence or by reasonable inferences which could be drawn from the evidence.

**16. Criminal Law— prosecutor's argument—misstatement of defense expert's testimony**

Even though the prosecutor's closing argument in a capital sentencing proceeding with regard to an aspect of the defense expert's testimony stating that the expert acknowledged that defendant would not have called him as a witness if he had not given a favorable diagnosis may have been incorrect, defendant did not challenge the prosecutor's recapitulation of the testimony and correct this misstatement at trial; the trial court's instruction cured the inaccuracy; and the inaccuracy was slight and did not infect the trial with unfairness.

**17. Criminal Law— prosecutor's argument—future dangerousness of defendant**

Although defendant contends the prosecutor injected his personal beliefs to the jury during closing arguments of a capital sentencing proceeding by stating that the future dangerousness of defendant was very relevant to a jury considering whether to give this defendant the death penalty, it is not improper for a prosecutor to urge the jury to recommend death out of concern for the future dangerousness of defendant.

**18. Criminal Law— prosecutor's argument—general deterrent effect of death penalty**

Although defendant contends the prosecutor improperly appealed to the jury's emotions during closing arguments of a capital sentencing proceeding when he argued the death penalty was the only deterrent for defendant that would sufficiently protect prison guards, prisoners, and anyone defendant would encounter if he escaped, the prosecutor may urge the jury to sen-

tence a particular defendant to death to specifically deter that defendant from engaging in future murders; and the State is free to argue that defendant will pose a danger to others in prison and that executing him is the only means of eliminating the threat to the safety of other inmates or prison staff.

## 19. Criminal Law— prosecutor's argument—defendant's prior first-degree murder conviction

The trial court did not err by failing to intervene ex mero motu in a capital sentencing proceeding during the prosecutor's closing argument that no aggravating circumstance anywhere in the United States demands the death penalty like a prior first-degree murder, because: (1) the prosecutor did not urge the jury to disregard the law or mislead the jury but encouraged the jury to focus on the facts the prosecutor believed justified imposition of the death penalty; and (2) the argument was proper in light of the prosecutor's role as a zealous advocate.

## 20. Criminal Law— prosecutor's argument—biblical reference

The prosecutor's biblical reference during closing arguments of a capital sentencing proceeding to Christ's suggestion that we should "render unto Caesar" was not grossly improper because: (1) the reference meant it is the duty of the jury to follow the civil law as given by the trial court, which is the same admonition routinely stated in pattern jury instructions; and (2) the prosecutor did not contend the State's law or its officers were divinely inspired.

## 21. Criminal Law— prosecutor's argument—parole eligibility

The prosecutor did not improperly interject parole eligibility into the jury's consideration during closing arguments of a capital sentencing proceeding because the prosecutor's statement regarding parole was made in reference to defendant's previous life sentence for the murder of his uncle, and not in regard to the determination of defendant's sentence for the murder of the victim in this case.

## 22. Criminal Law— prosecutor's argument—cumulative effect

The cumulative effect of the prosecutor's allegedly improper closing arguments during a capital sentencing proceeding did not deny defendant due process of law since defendant has failed to shown on an individual or collective basis that the prosecutor's

arguments strayed so far from the bounds of propriety as to impede defendant's right to a fair trial.

**23. Criminal    Law—    prosecutor's    argument—mitigating circumstances**

The trial court did not abuse its discretion or cause substantial and irreparable prejudice to defendant by denying defendant's motion for a mistrial in a capital sentencing proceeding based on the prosecutor's allegedly improper closing argument to the jury that a mitigating circumstance was something about the killing that makes the crime less severe or has a tendency to mitigate the crime, because: (1) the trial court instructed the jury before jury arguments were made that the closing arguments were not evidence in the case or instructions in the law; and (2) any minimization of mitigating circumstances or confusion regarding their definition caused by the prosecutor's argument was clarified and corrected by the trial court.

**24. Sentencing—    capital—aggravating    circumstances—prior capital felony conviction**

The trial court did not err in a capital sentencing proceeding by submitting the N.C.G.S. § 15A-2000(e)(2) aggravating circumstance concerning defendant having been previously convicted of another capital felony, which was based on defendant's 1966 conviction of first-degree murder upon a plea of guilty, because: (1) it is enough that if a defendant was tried capitally and convicted, he could have received a death sentence; (2) a crime which is statutorily considered a capital felony maintains that status even if a defendant's case is not tried as a capital case; (3) although defendant pled guilty to first-degree murder and, under the now repealed N.C.G.S. § 15-162.1 his case was not a capital case, the crime of first-degree murder was still a capital felony; (4) defendant was not impacted by the invalidation of N.C.G.S. § 15-162.1 since he pled guilty to first-degree murder and was unaffected by the reasons for the statute's invalidation; (5) the trial court decided to submit the (e)(2) circumstance based on the Supreme Court's ruling in defendant's prior appeal stating the record supports the (e)(2) circumstance; and (6) the importance of the prior conviction in this case was that defendant had committed a prior murder, not that defendant was eligible for the death penalty.

**25. Appeal and Error— preservation of issues—no argument in brief—issue waived**

Although defendant alleges the trial court committed plain error in a capital sentencing proceeding by its jury instruction defining "mitigating circumstance," he has waived this argument by failing to provide an explanation, analysis, or specific contention in his brief as required by N.C. R. App. P. 28(a) and (b)(5).

**26. Sentencing— capital—mitigating circumstances—instructions—burden of proof—no plain error**

Although defendant contends the trial court committed plain error in a capital sentencing proceeding by its jury instruction describing defendant's burden of proof as to the existence of any mitigating circumstances, the instruction given has previously been held to be proper, and defendant has not cited any new arguments for reconsideration of this issue.

**27. Sentencing— capital—mitigating circumstances—instructions—plain error standard**

Although defendant contends the trial court's N.C.G.S. § 15A-2000(f)(2) jury instruction in a capital sentencing proceeding should be reviewed under the constitutional error standard set forth in N.C.G.S. § 15A-1443(b) based on the trial court submitting a circumstance that was more restrictive than the circumstance set out in N.C.G.S. § 15A-2000(f)(2), claims of improper wording of mitigating circumstance instructions which were not objected to at trial are reviewed under the plain error standard.

**28. Sentencing— capital—mitigating circumstances—instructions—no plain error**

Although defendant contends the trial court improperly worded its instruction on the (f)(2) mental or emotional disturbance mitigator in a capital sentencing proceeding by allegedly "lumping together" three disorders including borderline intelligence, alcohol dependence, and cognitive disorder, the trial court did not commit plain error in its jury instruction for the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance because: (1) these three disorders were also submitted individually to the jury, and none were found; (2) the disorders included together in the instruction given for the (f)(2) mitigating circumstance were not connected by any conjunctive wording, thus negating defendant's argument

that the jury was confused by the conjunctive linking of the disorders; and (3) defendant has not shown that absent the error, the jury would have reached a different result.

**29. Sentencing— capital—mitigating circumstances mental or emotional disturbance—impaired capacity—peremptory instructions—controverted evidence**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for peremptory instructions on the N.C.G.S. § 15A-2000(f)(2) statutory mitigating circumstance that the capital felony was committed while defendant was under the influence of mental or emotional disturbance and the N.C.G.S. § 15A-2000(f)(6) statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, because the evidence was in fact controverted.

**30. Sentencing— capital—mitigating circumstances—impaired capacity—instructions—no plain error**

The trial court did not commit plain error in a capital sentencing proceeding by its submission of the N.C.G.S. § 15A-2000(f)(6) mitigating circumstance, concerning defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, because: (1) contrary to defendant's contention, there was no suggestion that defendant's borderline intellectual functioning, cognitive disorder, or alcohol dependence should be included as part of the instruction; (2) defense counsel indicated his concurrence with how the trial court planned to instruct on this circumstance; and (3) the jury unanimously found that the mitigating circumstances which individually addressed defendant's borderline intellectual functioning, cognitive disorder, and alcohol dependence either did not exist or did not have mitigating value.

**31. Sentencing— capital—nonstatutory mitigating circumstances—jury free to reject**

Although defendant contends the trial court erred in a capital sentencing proceeding by instructing the jury that it could reject proffered nonstatutory mitigating circumstances on the ground that the circumstances had no mitigating value, this argument has previously been rejected and defendant did not offer a new basis for reconsideration of this issue.

**32. Sentencing— capital—nonstatutory mitigating circumstances—peremptory instructions—controverted evidence**

The trial court did not err in a capital sentencing proceeding by denying defendant's request for peremptory instructions on the two nonstatutory mitigating circumstances that defendant is subject to being easily influenced by others and that defendant is subject to being victimized and/or harassed by others based on his low intelligence, because this evidence was controverted by evidence that: (1) defendant was the one who suggested the murder to his two cohorts and defendant devised the plan to lure the victim out of his house, revealing that defendant was a leader instead of a follower; and (2) defendant's assaultive episodes in prison showed him to be assertive and willing to use violence, instead of being a victim.

**33. Sentencing— capital—nonstatutory mitigating circumstances—subsumption**

The trial court did not err in a capital sentencing proceeding by refusing to submit defendant's requested seven nonstatutory mitigating circumstances separately, because the full substance of all the requested circumstances was subsumed into the circumstances which were submitted.

**34. Sentencing— capital—mitigating circumstances—mental or emotional disturbance—catchall**

The jury's sentencing decision in a capital trial was not unconstitutionally arbitrary based on its failure to find the N.C.G.S. § 15A-2000(f)(2) mitigating circumstance that the murder was committed while defendant was under the influence of mental or emotional disturbance and the N.C.G.S. § 15A-2000(f)(9) catchall mitigating circumstance, because: (1) the evidence of defendant's mental or emotional distress was controverted; (2) the jury is free to reject the evidence and not find a circumstance even if the evidence is uncontradicted; and (3) the jury was properly instructed on the catchall circumstance, and in the absence of contradictory evidence, there is an assumption that the jury comprehended the trial court's instructions.

**35. Sentencing— capital—nonstatutory mitigating circumstances**

Although defendant contends the jury's sentencing decision was unconstitutionally arbitrary based on the jury's failure to find sixteen of the nonstatutory mitigating circumstances that were

submitted, the Supreme Court has consistently upheld the constitutionality of a jury rejecting a nonstatutory mitigating circumstance if none of the jurors find facts supporting the circumstance or if none of the jurors deem the circumstance to have mitigating value.

### 36. Sentencing— capital—death penalty not disproportionate

The trial court did not err by imposing the death sentence because: (1) defendant was convicted under the theory of premeditation and deliberation; (2) the murder was committed in the victim's home; (3) defendant has previously been convicted of a capital felony; and (4) defendant has numerous prior convictions.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Ellis, J., on 11 November 1997 after a capital resentencing proceeding held in Superior Court, Robeson County. Heard in the Supreme Court 20 September 1999.

*Michael F. Easley, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, and William B. Crumpler, Assistant Attorney General, for the State.*

*Sue A. Berry for defendant-appellant.*

LAKE, Justice.

Defendant was tried at the 19 January 1987 Special Session of Superior Court, Robeson County, and was convicted of murder in the first degree. Upon recommendation of the jury, defendant was sentenced to death. On appeal, this Court found no error. *State v. Cummings*, 323 N.C. 181, 372 S.E.2d 541 (1988). The Supreme Court of the United States granted defendant's petition for writ of certiorari and, on 19 March 1990, vacated the judgment and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Cummings v. North Carolina*, 494 U.S. 1021, 108 L. Ed. 2d 602 (1990).

On remand, this Court found *McKoy* error in defendant's capital sentencing proceeding, vacated defendant's sentence of death and remanded for a new capital sentencing proceeding. *State v. Cummings*, 329 N.C. 249, 404 S.E.2d 849 (1991). The resentencing proceeding was held at the 20 October 1997 Criminal Session of Superior Court, Robeson County, and the sentencing jury again rec-

ommended a sentence of death. Accordingly, a sentence of death was again entered on 11 November 1997.

Defendant appeals to this Court as of right from the sentence of death. On appeal, defendant makes seventy-nine arguments, supported by seventy-nine assignments of error. We have carefully considered each of these arguments and conclude that defendant's capital resentencing proceeding was free of prejudicial error and that the death sentence is not disproportionate. We therefore uphold defendant's sentence of death.

The evidence supporting defendant's conviction for first-degree murder is summarized in this Court's prior opinion, *Cummings*, 323 N.C. 181, 372 S.E.2d 541. The basic facts are, as predicated upon an eyewitness account, that on the evening of 15 August 1986, defendant volunteered to kill the victim, Jesse Ward, because Ward and defendant's cousin, Grady Jacobs, had argued about a dog that Ward had sold to Jacobs. That same night, defendant shot and killed Ward in Ward's home. Additional evidence will not be repeated in this opinion except where necessary to discuss the issues now before us.

**[1]** In his first two assignments of error, defendant contends he was prejudiced when the State engaged in prosecutorial misconduct by subpoenaing all of defendant's confidential prison records and by the disclosure of those records during cross-examination of witnesses. Under section 148-76 of our General Statutes, it is the duty of the Records Section of the State prison system to maintain the combined case records of criminals. N.C.G.S. § 148-76 (1999). The statute specifically provides that "[t]he information collected shall be classified, compared, and made available to law-enforcement agencies, courts, correctional agencies, or other officials requiring criminal identification, crime statistics, and other information respecting crimes and criminals." *Id.*

In the instant case, the State subpoenaed defendant's prison records, and those records were made available to the State pursuant to the statutory mandate of section 148-76. Clearly, the State did not engage in prosecutorial misconduct by following statutory procedure in obtaining prison records. Additionally, defense counsel did not object to the subpoena at trial; rather, counsel made a motion, which was granted, that defense counsel be given copies of all prison records received by the State.

As to defendant's contention that he was prejudiced by disclosure of the prison records in the State's cross-examination of defense

witnesses, defendant provides no support for this contention. Notwithstanding his lack of specificity, we have reviewed the record and find that it does not reveal any inappropriate references by the State to defendant's prison records. We, therefore, find no error in the State's and trial court's adherence to the statutory mandate of section 148-76 and no evidence of prejudicial impact resulting from the release and review of defendant's records.

[2] In his next assignment of error, defendant contends the trial court committed reversible error by excusing, outside of defendant's presence and in violation of his constitutional right to be present, several prospective jurors summoned for a special venire. Prior to defendant's case being called for trial, the trial judge stated for the record that he had previously been contacted by jurors with special problems seeking excusal from jury duty. The trial judge identified each prospective juror by name and gave the reason for each juror's excusal. The trial judge excused one juror because he was ninety-three years old and suffered from Alzheimer's, he excused one because he was a full-time student who had served as a juror in several civil cases during that session of court and he excused three because they were out of the state or country.

" 'Defendant's right to be present at all stages of his trial does not include the right to be present during preliminary handling of the jury venires before defendant's own case has been called.' " *State v. Hyde*, 352 N.C. 37, 51, 530 S.E.2d 281, 291 (2000) (quoting *State v. Workman*, 344 N.C. 482, 498, 476 S.E.2d 301, 309-10 (1996)). The record in the present case reflects that prospective jurors with justifications for excusal from jury duty on the day defendant's case was called for trial were excused before the State called defendant's case. Accordingly, we conclude defendant had no right to be present during the preliminary qualification of these prospective jurors, and we overrule this assignment of error.

[3] In his fourth assignment of error, defendant asserts constitutional error occurred during the *voir dire* of prospective jurors when the prosecutor used examples of aggravating circumstances which were not relied on in defendant's sentencing proceeding. The record reveals that when explaining "how death penalty sentencing works," the prosecutor provided examples of the eleven aggravating circumstances set out by the legislature in section 15A-2000(e) of our General Statutes, including killing a police officer, killing while committing armed robbery and killing for pecuniary gain. When he gave

STATE v. CUMMINGS

[352 N.C. 600 (2000)]

each example, the prosecutor stated clearly that the example of an aggravating circumstance being used did not apply to the case at hand and that it was "just an example."

Defendant did not object to the prosecutor's statements at trial and now asserts plain error. However, "we have previously decided that plain error analysis applies only to instructions to the jury and evidentiary matters." *State v. Greene*, 351 N.C. 562, 566, 528 S.E.2d 575, 578 (2000); *see also State v. Atkins*, 349 N.C. 62, 81, 505 S.E.2d 97, 109 (1998), *cert. denied*, 526 U.S. 1147, 143 L. Ed. 2d 1036 (1999). We have " 'decline[d] to extend application of the plain error doctrine to situations in which the trial court has failed to give an instruction during jury *voir dire* which has not been requested.' " *Greene*, 351 N.C. at 566-67, 528 S.E.2d at 578 (quoting *Atkins*, 349 N.C. at 81, 505 S.E.2d at 109-10). We now likewise decline to extend application of the plain error doctrine to situations where a party has failed to object to statements made by the other party during jury *voir dire*. Defendant's failure to raise this issue during his trial constitutes waiver, pursuant to Rule 10(b)(2) of the Rules of Appellate Procedure. N.C. R. App. P. 10(b)(2).

**[4]** Next, defendant contends the trial court erred in excusing prospective juror Inman for cause based on her opposition to the death penalty. We disagree.

In order to determine whether a prospective juror may be excused for cause because of that juror's views on capital punishment, the trial court must consider whether those views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)), *quoted in State v. Morganherring*, 350 N.C. 701, 724, 517 S.E.2d 622, 636 (1999), *cert. denied*, —— U.S. ——, 146 L. Ed. 2d 322 (2000). During *voir dire*, the following colloquy occurred:

> THE COURT: Do you have any personal, moral, or religious beliefs either against the death penalty or against life imprisonment as an appropriate sentence for a person convicted of first-degree murder?

> [PROSPECTIVE JUROR]: I don't believe in capital punishment.

> . . . .

[PROSECUTOR]: So is it—is it a correct statement to say that no evidence could get you to change your personal belief; is that correct?

[PROSPECTIVE JUROR]: I wouldn't want to. How should I say this? I don't think that I can give—say someone should be able to die, you know, in any shape or form.

[PROSECUTOR]: Okay. So that—that's a personal belief that you have?

[PROSPECTIVE JUROR]: Right.

[PROSECUTOR]: So, in other words, if part of your responsibility as a juror would be to come in here and sentence somebody to die, would you say that your ability to do that is impaired by your personal beliefs or would your personal beliefs even prevent you from being able to do that?

[PROSPECTIVE JUROR]: I think it would prevent me.

Based on prospective juror Inman's responses, the prosecutor moved for the juror's excusal for cause. Defense counsel did not object to the challenge for cause or follow up with additional questions for prospective juror Inman, and the trial court allowed the prosecutor's challenge.

Prospective jurors with reservations about capital punishment must be able to " '*state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law.*' " *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 908 (1993) (quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986)) (alteration in original). The decision " '[w]hether to allow a challenge for cause in jury selection is . . . ordinarily left to the sound discretion of the trial court which will not be reversed on appeal except for abuse of discretion.' " *State v. Stephens*, 347 N.C. 352, 365, 493 S.E.2d 435, 443 (1997) (quoting *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992)), *cert. denied*, 525 U.S. 831, 142 L. Ed. 2d 66 (1998). This Court has previously stated that "a prospective juror's bias for or against the death penalty cannot always be proven with unmistakable clarity." *State v. Miller*, 339 N.C. 663, 679, 455 S.E.2d 137, 145, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995). However, "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . . [T]his is why deference

must be paid to the trial judge who sees and hears the juror." *Wainwright*, 469 U.S. at 425-26, 83 L. Ed. 2d at 852-53.

In the present case, Ms. Inman stated she felt her personal beliefs would "prevent" her from being able to consider the death penalty, and defendant did not take the opportunity to explore and elicit her views further. In light of the questions and responses here, we cannot conclude the trial court abused its discretion by excusing prospective juror Inman. This assignment of error is overruled.

[5] Next, in assignment of error six, defendant contends the trial court committed error by ordering reciprocal discovery of raw data from defendant's expert witnesses. The reciprocal discovery provisions applicable to criminal proceedings require defendants to produce the following for inspection and copying:

> results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, . . . which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial, when the results or reports relate to his testimony.

N.C.G.S. § 15A-905(b) (1999); *see also State v. McCarver*, 341 N.C. 364, 397-98, 462 S.E.2d 25, 44 (1995) (State entitled to inspect and copy incomplete personality test which provided expert witness with some "raw data"), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). In the instant case, defense counsel informed the trial court that two psychologists, who were witnesses for the defense, had confidentiality and/or ethical concerns with providing copies of "raw data" from their interviews of defendant unless the trial court so ordered. Defense counsel stated that defendant did not object to copies of the data being provided to the State and, in fact, initiated the discussion of a court order compelling discovery. In light of clear statutory requirements for reciprocal discovery, precedent upholding those requirements, and defendant's own request for a court order in this case, we find no error in the trial court's ordering such discovery.

After review of applicable law, defendant voluntarily abandoned issue seven.

[6] In assignments of error eight, nine, eleven and fourteen, defendant argues the trial court erred in allowing the State to interject the issue of parole during opening statements, cross-examination of

defendant and cross-examination of witnesses Gerald DeRoach and Dr. David Hattem. Defendant did not object to the prosecutor's questioning at trial and now asserts plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the . . . mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.) (footnote omitted), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)), *quoted in State v. Cole,* 343 N.C. 399, 419-20, 471 S.E.2d 362, 372 (1996), *cert. denied,* 519 U.S. 1064, 136 L. Ed. 2d 624 (1997). "In order to prevail under a plain error analysis, defendant must establish . . . that 'absent the error, the jury probably would have reached a different result.' " *State v. Sierra,* 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994) (quoting *State v. Jordan,* 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)), *quoted in Morganherring,* 350 N.C. at 722, 517 S.E.2d at 634. *Morganherring,* 350 N.C. at 722, 517 S.E.2d at 634 (quoting *State v. Sierra,* 335 N.C. 753, 761, 440 S.E.2d 791, 796 (1994)).

Defendant objects to several statements regarding parole made by the prosecutor during the resentencing proceeding. First, during opening statements, the prosecutor stated that the murder victim in the instant case was the second person defendant had murdered in cold blood and that defendant had committed the second murder while on parole from his life sentence for the 1966 murder of his uncle. Then, during cross-examination of defendant, the prosecutor asked defendant if his sentence for the 1966 murder had been for "the rest of his natural life." Next, during cross-examination of DeRoach, a volunteer literacy tutor at Central Prison, the prosecutor asked if DeRoach was aware that defendant had been sentenced to a "natural life" term beginning in 1966. Finally, during cross-examination of Dr. Hattem, a psychologist who evaluated defendant, the prosecutor

asked if Dr. Hattem had an opinion about whether defendant would be physically dangerous to other people either in prison or on parole. For the reasons stated below, we overrule the assignments of error associated with the aforementioned statements.

Defendant argues that this Court has consistently held that evidence regarding parole eligibility is not a relevant consideration in a capital sentencing proceeding. *See State v. Conaway*, 339 N.C. 487, 520, 453 S.E.2d 824, 845, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995). We agree with defendant's statement of the law; however, our review of the record reveals no evidence suggesting that during opening statements or during cross-examination of witnesses, the prosecutor attempted to connect defendant's prior record and prior parole eligibility to improper parole considerations with respect to sentencing in *this* case. The prosecutor did not imply that parole was a possibility in the instant case if the death sentence was not imposed. His only reference to parole was in regard to defendant's 1966 life sentence for murder, from which sentence defendant was paroled. Given the context in which the unobjected-to statements of the prosecutor were made, we hold they were not improper.

We also note that during direct examination of defendant, defendant voluntarily testified regarding the 1966 murder of his uncle, his resulting life sentence, his escape attempts and escapes from prison, the crimes he committed while on escape, and the several times he was paroled and recommitted after parole violations. By testifying about his previous life sentence and parole, defendant effectively opened the door to cross-examination on these issues. *State v. Bowman*, 349 N.C. 459, 480, 509 S.E.2d 428, 441 (1998), *cert. denied*, 527 U.S. 1040, 144 L. Ed. 2d 802 (1999). The prosecutor's questions on cross-examination were merely a reiteration of facts regarding defendant's parole from his previous life sentence brought into evidence by defendant through his own testimony.

With regard to the prosecutor's questions to Dr. Hattem pertaining to the doctor's opinion of defendant's future dangerousness, this Court has previously held that a prosecutor may urge the jury to recommend death out of concern for the future dangerousness of the defendant. *State v. Steen*, 352 N.C. 227, 279, 536 S.E.2d 1, 31 (2000); *see also State v. Conner*, 345 N.C. 319, 333, 480 S.E.2d 626, 632-33, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997). In the instant case, there is substantial evidence supporting a concern for the future dangerousness of defendant, not the least of which is the

fact that defendant had previously been convicted of murder. Defendant's contention that the trial court erred in allowing the prosecutor to ask for an opinion regarding defendant's future dangerousness is without merit.

**[7]** In his next assignment of error, defendant contends the trial court abused its discretion in allowing the State to conduct recross-examination of defendant, over defendant's objection, outside the scope of redirect examination. At the outset, we note that the trial court has broad discretion concerning the scope of cross-examination, and this discretion is not limited by the Rules of Evidence. *State v. Warren*, 347 N.C. 309, 317, 492 S.E.2d 609, 613 (1997), *cert. denied*, 523 U.S. 1109, 140 L. Ed. 2d 818 (1998). "Generally, the scope of permissible cross-examination is limited only by the discretion of the trial court and the requirement of good faith." *State v. Locklear*, 349 N.C. 118, 156, 505 S.E.2d 277, 299 (1998), *cert. denied*, 526 U.S. 1075, 143 L. Ed. 2d 559 (1999).

In the instant case, defendant testified on direct examination about the details of the 1966 murder of his uncle, Odis Bryant. On redirect, defense counsel asked defendant to tell the jury about the problems which occurred between defendant and George Moore, an inmate stabbed by defendant in prison. Defendant stated, "George Moore was a—a violent type person. I'm not saying that—that I haven't had some violence in my life as well. I don't know hardly how to explain it, but whenever I shot my uncle—." Defendant's counsel then interrupted defendant and said, "Tell us about you and George Moore," and defendant proceeded to do so. During redirect, defendant also stated several times that he did not kill Jesse Ward, the victim in this case.

On recross-examination, the prosecutor asked defendant if he remembered answering questions at his last hearing about his uncle's murder. When defendant answered affirmatively, the prosecutor asked defendant if he remembered saying, "I was so near drunk, they said I shot him," a statement which suggests defendant did not remember shooting his uncle. The prosecutor then asked defendant if defendant also remembered telling his psychiatrist that he had no memory of what happened in the Jesse Ward killing. Defense counsel objected to recross questioning regarding the murder of defendant's uncle on the basis that the redirect had focused on violent acts committed by defendant while in prison and, other than defendant's brief mention of his uncle, the redirect did not cover the uncle's murder or focus on the Jesse Ward murder. At the bench, the prosecutor noted

that defendant had stated during redirect that he shot his uncle and had also stated several times that he did not shoot Jesse Ward. The prosecutor argued that questioning regarding defendant's memory of both of the murders was, therefore, proper on recross, and the trial court agreed.

Although defense counsel stopped defendant before he spoke in detail about the murder of his uncle, defendant did state on redirect, "I shot my uncle." Defendant also stated that he did not kill Jesse Ward. We hold that these statements were sufficient to support the trial court's discretionary ruling that the questions on recross were within the appropriate scope and, therefore, we reject defendant's argument. This assignment of error is overruled.

[8] In assignment of error number twelve, defendant contends the trial court erred in allowing the State, without objection from defendant, to conduct a *voir dire* of defense witness Dr. Hattem regarding the basis of his opinions prior to the witness being qualified as an expert. We note that the *voir dire* defendant objects to occurred entirely outside the presence of the jury; therefore, we find no basis, and defendant offers no basis, for how the jury could have been prejudiced by the questions asked. Taking the impossibility of prejudicial impact into consideration, and applying the same reasoning applied in assignment of error number four where we declined to extend application of the plain error doctrine to statements made without objection during jury *voir dire*, we now decline to extend application of the plain error doctrine to statements made without objection, outside the presence of the jury, during witness *voir dire*. Defendant's failure to raise this issue during his trial constitutes waiver pursuant to Rule 10(b)(2). This assignment of error is dismissed.

[9] In defendant's next assignment of error, he contends the trial court erred by allowing the State to cross-examine defense witness Hattem concerning fees charged by the witness and by allowing the State to pose a question that required conjecture on the part of the witness. Specifically, the prosecutor asked defendant's psychologist:

Q. And, if you had been of the opinion that [defendant] did not qualify for these particular mitigating circumstances, do you think [defendant's attorney] would put you up on there—on the stand and you'd be making a hundred and fifty dollars [an] hour right now?

Although defendant contends he objected to the prosecutor's question, the actual objection was to the form of the question, which we would agree was poorly phrased. As to the substance of the question, "this Court has consistently held that 'an expert witness' compensation is a permissible cross-examination subject to test partiality towards the party by whom the expert was called.' " *State v. Brown*, 335 N.C. 477, 493, 439 S.E.2d 589, 636 (1994) (quoting *State v. Allen*, 322 N.C. 176, 195, 367 S.E.2d 626, 636 (1988)), *quoted in State v. Lawrence*, 352 N.C. 1, 22, 530 S.E.2d 807, 821 (2000). Additionally, we have held that "the scope of permissible cross-examination is limited only by the discretion of the trial court and the requirement of good faith." *Locklear*, 349 N.C. at 156, 505 S.E.2d at 299. " 'A prosecutor's questions are presumed to be proper unless the record shows that they were asked in bad faith.' " *State v. Fleming*, 350 N.C. 109, 139, 512 S.E.2d 720, 740 (quoting *State v. Bronson*, 333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992)), *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). The record does not support defendant's broad and unsubstantiated allegation that this question by the prosecutor was asked in bad faith. The trial court did not abuse its discretion in overruling defendant's objection.

[10] In his fifteenth and sixteenth assignments of error, defendant contends the trial court erred in allowing the State to cross-examine Dr. Hattem with documents which were not properly introduced into evidence. Defendant acknowledges that no objection was made at trial and that, therefore, these issues may be reviewed only for plain error.

The documents defendant contends were not properly admitted into evidence were part of defendant's North Carolina Department of Correction prison records, which the parties had stipulated before trial were "true, accurate, and authentic copies of the original records" and were "competent and admissible into evidence at [the] sentencing hearing upon the motion of either party." Defendant had agreed, therefore, to the admissibility of the documents in question before trial. Defense witness Dr. Hattem testified that the defense had provided him with the complete prison records for his review, and the doctor answered questions regarding the content of those records during examination. Defendant does not challenge the accuracy of the prison records or the veracity of the statements made by Dr. Hattem regarding their contents. Under these circumstances, and using plain error analysis, any error in the introduction of part of the stipulated documents into evidence without adequate foundation is

not the type of exceptional case where we can say that the claimed error is so fundamental that justice could not have been done. Accordingly, we find no merit in these arguments and overrule the assignments of error on which they were based.

After review of applicable law, defendant voluntarily abandoned issues seventeen and eighteen.

In assignments nineteen through thirty and thirty-two, defendant assigns error to portions of the State's closing arguments, though no objection was interposed during any portion of the closing arguments. When the defense fails to object to a prosecutor's argument, "the remarks 'must be gross indeed for this Court to hold that the trial court abused its discretion in not recognizing and correcting *ex mero motu* the comments regarded by defendant as offensive only on appeal.' " *State v. Basden*, 339 N.C. 288, 300, 451 S.E.2d 238, 244 (1994) (quoting *State v. Brown*, 327 N.C. 1, 19, 394 S.E.2d 434, 445 (1990)), *cert. denied*, 515 U.S. 1152, 132 L. Ed. 2d 845 (1995). Having examined defendant's thirteen assignments of error relating to the prosecutor's closing arguments for gross impropriety requiring *ex mero motu* intervention by the trial court, we find no error and address each argument below.

In reviewing the prosecutor's arguments, we must stress that "prosecutors are given wide latitude in their argument[s]." *State v. Rouse*, 339 N.C. 59, 91, 451 S.E.2d 543, 560 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). Additionally, "the boundaries for jury argument at the capital sentencing proceeding are more expansive than at the guilt phase." *State v. Thomas*, 350 N.C. 315, 360, 514 S.E.2d 486, 513-14, *cert. denied*, 528 U.S. 1006, 145 L. Ed. 2d 388 (1999). In fact, " 'prosecutors have a duty to advocate zealously that the facts in evidence warrant imposition of the death penalty.' " *Id.* at 360, 514 S.E.2d at 514 (quoting *State v. Williams*, 350 N.C. 1, 25, 510 S.E.2d 626, 642, *cert. denied*, 528 U.S. 880, 145 L. Ed. 2d 162 (1999)). To determine the propriety of the prosecution's argument, the Court must review the argument in context and analyze the import of the argument within the trial context, including the evidence and all arguments of counsel. *Darden v. Wainwright*, 477 U.S. 168, 179, 91 L. Ed. 2d 144, 156 (1986).

[11] Defendant first objects to the prosecutor's speculation about the victim's last thoughts when the prosecutor posed the following questions to the jury:

Was he thinking that he'd never have the opportunity to bounce his grandchildren on his knee; never have the opportunity to go out and have another good meal; read a good book; do things that we all, in our everyday lives, take for granted? No. He was laying [sic] there thinking what did I do to deserve to die? What did I do to deserve to be gunned down in my own home?

Defendant contends the prosecutor's argument was designed to inflame the jury and was grossly improper. Although this Court has held that it will not condone an argument asking jurors to put themselves in place of the victim, "this Court has repeatedly found no impropriety when the prosecutor asks the jury to imagine the fear and emotions of a victim." *State v. Warren*, 348 N.C. 80, 109, 499 S.E.2d 431, 447, *cert. denied*, 525 U.S. 915, 142 L. Ed. 2d 216 (1998); *see also State v. Woods*, 345 N.C. 294, 312, 480 S.E.2d 647, 655, *cert. denied*, 522 U.S. 875, 139 L. Ed. 2d 132 (1997). In the instant case, the prosecutor's argument was fairly premised on the testimony presented by the family members who found the victim's dead body. The argument did not misstate or manipulate the evidence and was not improper.

**[12]** The next part of the closing argument defendant contends was improper was the prosecutor's statement that

[t]here are a lot of other things about this case like the callousness of the killing, the fact that the defendant will be dangerous in the future, that we would like to give you as aggravating circumstances, but we cannot do that. We are limited by the law.

Defendant argues the State improperly argued its desire to present aggravating circumstances which are not specifically listed as aggravating circumstances in section 15A-2000(e), and contends the trial court should have intervened *ex mero motu*.

Although the prosecutor did make the statement referenced by defendant, the statement was a fair synopsis of these aspects of the case, and the prosecutor made clear to the jury that there was only one aggravating circumstance relevant to defendant's case under North Carolina law, that defendant had a prior capital felony conviction. In his argument, the prosecutor did not misstate the law or ask the jury to find aggravating circumstances which are not included in section 15A-2000(e). The trial court properly instructed the jurors on

the one aggravating circumstance and cautioned the jurors that they were to apply the law as given to them and "not as you think it is or as you might like it to be." This Court presumes that jurors follow the trial court's instructions. *State v. Richardson*, 346 N.C. 520, 538, 488 S.E.2d 148, 158 (1997), *cert. denied*, 522 U.S. 1056, 239 L. Ed. 2d 652 (1998). Therefore, even assuming the prosecutor's argument was improper, the trial court's instructions would have cured the impropriety. *State v. Buckner*, 342 N.C. 198, 238, 464 S.E.2d 414, 437 (1995), *cert. denied*, 519 U.S. 828, 136 L. Ed. 2d 47 (1996).

[13] Defendant next contends the prosecutor presented an inaccurate explanation of the catchall mitigating circumstance in section 15A-2000(f)(9) which diminished the importance of mitigation and denigrated the list of nonstatutory mitigating circumstances. In explaining mitigating circumstances, the prosecutor made the following statement:

> [T]here are nine mitigating circumstances there in the statute. But number nine says any other circumstance arising from the evidence which the jury deems to have mitigating value. What they use that number nine for is to come up with anything that they can think of to fill up this issues and recommendation sheet with as many as they can think of to try to get you to find them and use them to balance. Anything that they come up with, under the law, the Judge has to submit to you.
>
> And what they do is they just try to think of everything that they can possibly think of and put it all down here in the hopes that you will find all or most of them and it's used . . . to play the numbers game.
>
> And the first thing I'd like to say to you is numbers mean nothing. You assign the value to any aggravating circumstance and you will assign the value to any mitigating circumstance. So there can be a hundred mitigating circumstances and one aggravating circumstance and the aggravating circumstance can still outweigh the mitigating circumstances.

Defendant contends the prosecutor erroneously argued that the trial court must submit anything the defense can come up with to fill up the issues and recommendation sheet. While we agree that in contrast to its consideration of statutory mitigating circumstances, the trial court may consider nonstatutory circumstances but is not required to do so, *State v. Cameron*, 314 N.C. 516, 518-19, 335 S.E.2d

9, 10 (1985), we disagree with defendant's characterization of the prosecutor's argument. The prosecutor specifically stated that the mitigators offered by defendant had to be acceptable "under the law." "The prosecutor's arguments complained of here were an attempt to minimize the value of the mitigating circumstances," *Thomas*, 350 N.C. at 361, 514 S.E.2d at 514, and it is well settled that "prosecutors may legitimately attempt to deprecate or belittle the significance of mitigating circumstances," *Basden*, 339 N.C. at 305, 451 S.E.2d at 247, *quoted in Thomas*, 350 N.C. at 361, 514 S.E.2d at 514. We conclude this unobjected-to argument did not amount to gross impropriety requiring intervention by the trial court on its own motion.

[14] In assignments of error twenty-two and twenty-six, part of the assignments of error pertaining to the closing arguments, defendant contends the prosecutor improperly argued that factors such as defendant's difficult childhood, alcoholism and low IQ were not mitigating circumstances and could not be considered mitigating evidence by the jurors. The prosecutor stated that mitigating circumstances are those circumstances which may be considered extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders. He also stated that circumstances which take place before or after the killing, such as defendant's difficult childhood, have nothing to do with the killing and are therefore not mitigating.

Defendant argues that a mitigating circumstance does not have to relate to what happened to the victim but rather may relate to any aspect of defendant's character or record, or circumstance of the particular offense which might support the imposition of a sentence less than death. *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 988 (1978); *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 447 (1981).

The prosecutor in this case zealously encouraged the jury to consider and question whether aspects of the defendant's character, record and background should reduce defendant's moral culpability for the killing. This Court has held it is not error for the trial court to fail to interject *ex mero motu* in response to a prosecutor's argument that a proffered mitigator has little value. *Thomas*, 350 N.C. at 361, 514 S.E.2d at 514; *see also State v. Geddie*, 345 N.C. 73, 100, 478 S.E.2d 146, 160 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997); *State v. Moseley*, 338 N.C. 1, 50, 449 S.E.2d 412, 442 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). We have also

held it is not error for the trial court to fail to interject *ex mero motu* in response to a prosecutor's argument that proffered nonstatutory mitigators have no value at all. *State v. Powell*, 340 N.C. 674, 694, 459 S.E.2d 219, 229 (1995), *cert. denied*, 516 U.S. 1060, 133 L. Ed. 2d 688 (1996).

Prior to closing arguments in the present case, the trial court instructed the jury that the final arguments were neither evidence in the case nor instructions on the law, but were given to assist the jury in evaluating the evidence. After closing arguments, the trial court instructed the jury as follows:

It is now your duty to decide from all the evidence presented what the facts are. You must then apply the law, which I'm about to give you, concerning punishment to those facts.

It is absolutely necessary that you understand and apply the law as I give it to you and not as you think it is or as you might like it to be. . . .

. . . .

A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of a crime than first-degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first-degree murders.

Our law identifies several possible mitigating circumstances. However, in considering Issue 2, it would be your duty to consider as a mitigating circumstance any aspect of the defendant's character and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstance arising from the evidence which you deem to have mitigating value.

The trial court went on to outline and submit statutory mitigating circumstances, which the jury had the duty to consider as having mitigating value if determined to exist, including whether defendant was under the influence of a mental or emotional disturbance and whether defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law were impaired. Further, as to nonstatutory mitigating circumstances, the trial court instructed the jury to assess whether defendant was the

product of a socially deprived environment and whether the submitted circumstances that he dropped out of school at age fourteen, could not read or write until after he was fifty, began drinking alcohol at an early age, was an alcoholic when the offense was committed, overcame illiteracy and regularly attended church while in prison, suffered from serious health problems, had a full scale IQ of 74, and is easily influenced by others should be found to exist and to have mitigating value. In addition, the jury was instructed that it had the duty to consider any other circumstances which the jury could find from the evidence. Therefore, any minimization of mitigating circumstances or confusion regarding their definition and purpose resulting from arguments of counsel was clarified and corrected by the trial court immediately following arguments. This Court presumes that jurors follow the trial court's instructions. *Richardson*, 346 N.C. at 538, 488 S.E.2d at 158. Assuming *arguendo* that the prosecutor's argument about mitigating circumstances was improper in any respect, the trial court's accurate instructions would have cured the impropriety. *Buckner*, 342 N.C. at 238, 464 S.E.2d at 437.

[15] In assignment twenty-three, again relating to the reasonableness of the closing argument, defendant contends the prosecutor's arguments inferring bias on the part of Dr. Hattem were grossly improper and required intervention by the trial court *ex mero motu*. The prosecutor stated that Dr. Hattem was hired and paid by defendant for his favorable diagnosis and that Dr. Hattem had testified only for defendants, thus implying bias in favor of all defendants. As stated previously in this opinion, the prosecution is allowed wide latitude in its arguments, especially at sentencing, and is permitted to argue not only the evidence presented, but also all reasonable inferences which can be drawn from the evidence. *State v. Chandler*, 342 N.C. 742, 757, 467 S.E.2d 636, 645, *cert. denied*, 519 U.S. 875, 136 L. Ed. 2d 133 (1996). The prosecutor's statements identified by defendant as being objectionable, but not objected to by defendant at trial, were fully supported by the direct evidence of record or by reasonable inferences which could be drawn from that evidence. They did not exceed the "broad bounds allowed in closing arguments at the capital sentencing proceeding." *Thomas*, 350 N.C. at 362, 514 S.E.2d at 514.

[16] Defendant next contends that during closing, the prosecutor improperly stated that Dr. Hattem acknowledged that defendant would not have called Dr. Hattem as a witness if he had not given a favorable diagnosis. In actuality, in response to the prosecutor's

question, Dr. Hattem stated that the prosecutor would have to ask defense counsel that question.

We note for emphasis that, once again, defendant did not take the opportunity to challenge the prosecutor's recapitulation of the testimony and correct this misstatement at trial. The jurors were left to follow the trial court's instruction that "if [their] recollection of the evidence differs from that of the court or of the district attorney or the defense attorney, [they were] to rely solely upon [their] recollection of the evidence in [their] deliberations." We conclude that even though the prosecutor's argument in regard to this aspect of Dr. Hattem's testimony may have been incorrect, the trial court's instruction cured the inaccuracy. *Buckner*, 342 N.C. at 238, 464 S.E.2d at 437. This inaccuracy in the prosecutor's portrayal of the expert's testimony was slight and did not so infect the trial with unfairness as to deny defendant due process of law.

**[17]** In defendant's next assignment of error pertaining to closing arguments, defendant contends the prosecutor, in his argument that the future dangerousness of defendant was "very relevant to a jury considering whether or not to give this defendant the death penalty," impermissibly injected his personal beliefs into jury arguments. However, as previously stated in this opinion, this Court has held that "it is not improper for a prosecutor to urge the jury to recommend death out of concern for the future dangerousness of the defendant." *Williams*, 350 N.C. at 28, 510 S.E.2d at 644. The prosecutor's argument was proper in light of his role as a zealous advocate. *State v. McCollum*, 334 N.C. 208, 227, 433 S.E.2d 144, 154 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994).

**[18]** In assignment of error twenty-seven, defendant argues the prosecutor improperly appealed to the jury's emotions during closing when he argued the death penalty was the only deterrent for defendant that would sufficiently protect prison guards, prisoners and anyone defendant would encounter if he escaped. This Court has consistently "approved prosecutorial arguments urging the jury to sentence a particular defendant to death to specifically deter that defendant from engaging in future murders." *State v. McNeil*, 350 N.C. 657, 687, 518 S.E.2d 486, 504 (1999), *cert. denied*, —— U.S. ——, 146 L. Ed. 2d 321 (2000). We have also held that the State is free to argue that the defendant will pose a danger to others in prison and that executing him is the only means of eliminating the threat to the safety of other inmates or prison staff. *Steen*, 352 N.C. at 279, 536

S.E.2d at 31; *see also State v. Richmond*, 347 N.C. 412, 445, 495 S.E.2d 677, 695-96, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998). The prosecutor's argument regarding future dangerousness was not improper.

**[19]** Next, defendant contends the prosecutor improperly argued that "no aggravating circumstance anywhere in the United States demands the death penalty like a prior first-degree murder." In this argument, the prosecutor did not urge the jury to disregard the law or mislead the jury, but "simply encouraged the jury to focus on the facts [the prosecutor] believed justified imposition of the death penalty." *State v. Bishop*, 343 N.C. 518, 553, 472 S.E.2d 842, 861 (1996), *cert. denied*, 519 U.S. 1097, 136 L. Ed. 2d 723 (1997). In a similar case, this Court found the prosecutor's argument that "if the aggravating circumstances don't outweigh the mitigating circumstances that you may find, then there will never be a case where they do," was proper "in light of [the prosecutor's] role as a zealous advocate." *McCollum*, 334 N.C. at 227, 433 S.E.2d at 154. In the instant case, we conclude that the prosecutor's argument in this regard was proper as well and did not warrant the trial court's intervention *ex mero motu*.

**[20]** In his next assignment of error, assignment twenty-nine, defendant contends the prosecutor improperly argued a biblical reference when he said:

> I want you to also remember what Jesus said when the Pharisees tried to trip him up and asked Him should we pay taxes. And Jesus said well, who's on the coin? And the answer was Caesar. Jesus said well, render unto Caesar what is Caesar's.

> And, ladies and gentlemen, in this case, the defendant belongs to Caesar and that means that defendant belongs to the death penalty under the law of the land. And Christ was saying to follow the law and give to God what's God's. Give to Caesar what is Caesar's and this defendant belongs to Caesar.

"Biblical references this Court has disapproved have been arguments to the effect that the law enforcement powers of the State come from God and that to resist those powers is to resist God." *Geddie*, 345 N.C. at 100, 478 S.E.2d at 160. When the potential impact of a biblical reference is slight, it does not amount to gross impropriety requiring the trial court's intervention. *Williams*, 350 N.C. at 26-27, 510 S.E.2d at 643; *see also State v. Brown*, 320 N.C. 179, 206, 358 S.E.2d 1, 19, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

The prosecutor's argument in the case *sub judice*, although inartfully stated, was not grossly improper. As read in context, the prosecutor's reference to Christ's suggestion that we should "render unto Caesar" means, in essence, that it is the duty of the jury to follow the civil law, as given by the trial court. This is the same admonition routinely stated by our trial courts in pattern jury instructions. The prosecutor did not contend that the State's law or its officers were divinely inspired; he merely urged the jury to return a recommendation of death under the law. This assignment of error is overruled.

[21] Defendant next contends the prosecutor improperly interjected parole eligibility into the jury's consideration during closing arguments when he said, "You know he was paroled from his life sentence and he acquired the same weapon he used to kill [his uncle] with." Defendant correctly cites precedent holding that evidence regarding parole eligibility is not a relevant consideration in a capital sentencing proceeding. *See Conaway*, 339 N.C. at 520, 453 S.E.2d at 845. However, defendant has misapplied the contextual application of that holding. In *Conaway*, the holding was in response to the question of whether a jury should consider parole eligibility in determining whether a defendant should be given a life sentence instead of the death penalty. In the case *sub judice*, the prosecutor's statement regarding parole was made in reference to defendant's previous life sentence for the murder of his uncle, not in regard to the determination of defendant's sentence for the murder of Ward. Therefore, the *Conaway* precedent cited by defendant is not applicable to the reference to parole made by the prosecutor in the case at hand.

With regard to the question of whether the prosecutor improperly interjected defendant's *prior* parole eligibility in this case, we have reviewed this same issue in assignments of error eight, nine, eleven and fourteen of this opinion and, based on the reasoning applied there, we conclude there was no error here and overrule these assignments of error.

After review of applicable law, defendant voluntarily abandoned issue thirty-one.

[22] In assignment thirty-two, defendant's final assignment of error relating to closing arguments, he argues that the cumulative effect of the prosecutor's allegedly improper arguments so infected the trial with unfairness as to deny defendant due process of law. For all of the reasons explained above for each of defendant's individual contentions regarding the prosecution's closing arguments, we hold this

final argument lacks merit. Defendant has not shown on an individual or collective basis that the prosecutor's arguments "stray[ed] so far from the bounds of propriety as to impede defendant's right to a fair trial." *Atkins*, 349 N.C. at 84, 505 S.E.2d at 111.

**[23]** After counsel completed their closing arguments, and before the trial court charged the jury, defense counsel filed a motion for mistrial based upon "the improper closing argument of Assistant District Attorney Rodney G. Hasty wherein he advised the jury that a mitigating circumstance was something about the killing that makes the crime less severe or has the tendency to mitigate the crime." The trial judge heard oral arguments on the motion and pointed out that before jury arguments were made, he had instructed the jury that the closing arguments were not evidence in the case or instructions in the law. The trial judge also referred counsel to instructions he intended to give the jurors concerning their duty to apply the law as given to them by him. The trial judge stated that he believed these instructions would cure any misstatement in the prosecutor's argument and, accordingly, he denied the motion for mistrial. Defendant now contends, in assignment thirty-three, that the prosecutor's misstatement of the law in this case was too serious to be cured by the trial court's final instructions and that the trial court erred in denying defendant's motion for mistrial.

Section 15A-1061 of our General Statutes provides that the trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings . . . resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1999). It is well established that the decision as to whether substantial and irreparable prejudice has occurred lies within the sound discretion of the trial judge and that his decision will not be disturbed on appeal absent a showing of abuse of discretion. *State v. McNeill*, 349 N.C. 634, 646, 509 S.E.2d 415, 422-23 (1998), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999). A mistrial is " 'a drastic remedy, warranted only for such serious improprieties as would make it impossible to attain a fair and impartial verdict.' " *State v. Sanders*, 347 N.C. 587, 601, 496 S.E.2d 568, 577 (1998) (quoting *State v. Stocks*, 319 N.C. 437, 441, 355 S.E.2d 492, 494 (1987)).

As stated in our review and analysis pertaining to issues twenty-two and twenty-six, any minimization of mitigating circumstances or confusion regarding their definition caused by the prosecutor's argument was clarified and corrected by the trial court immediately following arguments. Assuming *arguendo* that this further reference by

the prosecutor about mitigating circumstances was lacking or improper in any respect, the trial court's instructions would have cured the impropriety. *Buckner*, 342 N.C. at 238, 464 S.E.2d at 437. Accordingly, we hold the trial court did not abuse its discretion or cause substantial and irreparable prejudice to defendant's case in denying defendant's motion on this basis for mistrial. This assignment of error is overruled.

After review of applicable law, defendant voluntarily abandoned issue thirty-four.

[24] In arguments thirty-five through thirty-eight, defendant contends the sole aggravating circumstance submitted by the trial court and found by the jury in this case was not supported by the record. The aggravating circumstance submitted was the (e)(2) aggravator, which reads in pertinent part, "[t]he defendant had been previously convicted of another capital felony," N.C.G.S. § 15A-2000(e)(2) (1999), and which was submitted based upon defendant's 1966 conviction of first-degree murder upon a plea of guilty. Defendant argues that his guilty plea was entered under N.C.G.S. § 15-162.1, which was repealed effective 25 March 1969, and under that statute if a defendant tendered a plea of guilty to first-degree murder and that plea was agreed to by the solicitor for the State and approved by the presiding judge, the acceptance had the effect of limiting defendant's potential punishment to a life sentence and precluding a sentence of death. Defendant argues, therefore, that since he was not eligible for the death penalty by virtue of his plea, he was not convicted of a capital felony, as required by the (e)(2) aggravating circumstance. We disagree.

At the outset, we note that there is a relevant distinction between a "capital case" and a "capital felony" and the way each is affected when it is determined whether the death penalty will or will not be presented to the jury as a sentencing option. In defining a "capital felony," it is necessary to interpolate definitions outlined in two different statutes. Section 14-17 of our General Statutes provides that "[a] murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing . . . shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000." N.C.G.S. § 14-17 (1999). Section 15A-2000(a)(1) defines a "capital felony" as "one which *may be* pun-

ishable by death." N.C.G.S. § 15A-2000(a)(1) (emphasis added). Reading these two sections together, there is no question that first-degree murder is a "capital felony," and that "[t]he test is not the punishment which *is* imposed, but that which *may be* imposed." *Fitzpatrick v. United States*, 178 U.S. 304, 307, 44 L. Ed. 1078, 1080 (1900) (emphasis added).

This Court has approved the definition of a "capital case" " 'as one in which the death penalty may, but need not necessarily, be imposed.' " *State v. Barbour*, 295 N.C. 66, 70, 243 S.E.2d 380, 382-83 (1978) (quoting *State v. Clark*, 18 N.C. App. 621, 624, 197 S.E.2d 605, 607 (1973)). However, "whether or not a particular defendant depending upon the date his crime was committed faces the death penalty the crime of first degree murder is a *'capital offense'* . . . . This is so notwithstanding that the trial itself may not be a 'capital case.' " *State v. Sparks*, 297 N.C. 314, 321, 255 S.E.2d 373, 378 (1979). "A case loses its 'capital' nature if it is determined that while the death penalty is a possible punishment for *the crime charged*, it may not be imposed in *that particular case.*" *State v. Jackson*, 317 N.C. 1, 7, 343 S.E.2d 814, 818 (1986), *sentence vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987). A capital felony may be treated as a noncapital case when the State has no evidence of any aggravating circumstances. *State v. Britt*, 320 N.C. 705, 710, 360 S.E.2d 660, 662 (1987); *see also State v. Braswell*, 312 N.C. 553, 559, 324 S.E.2d 241, 246 (1985) (prosecution announced that it would not seek the death penalty due to a lack of any aggravating circumstances); *State v. Leonard*, 296 N.C. 58, 62, 248 S.E.2d 853, 855 (1978) (prosecution announced at the beginning of the trial that the State would not seek the death penalty). This does not, however, change the fact that defendant in the instant case was previously convicted of having committed an offense that is a "capital felony." A crime which is statutorily considered a "capital felony" maintains that status even if a defendant's case is not tried as a "capital case." It is enough that *if* a defendant was tried capitally and convicted, he *could* have received a death sentence. *State v. Flowers*, 347 N.C. 1, 34, 489 S.E.2d 391, 410 (1997) (holding (e)(2) appropriate where evidence showed defendant was convicted of first-degree murder and tried capitally, but received a life sentence), *cert. denied*, 522 U.S. 1135, 140 L. Ed. 2d 150 (1998). Therefore, although defendant pled guilty to first-degree murder and, under the now repealed N.C.G.S. § 15-162.1, his case was not a "capital case," the crime of first-degree murder was still a "capital felony."

In support of his argument, defendant relies on precedent in *State v. Bunning*, 338 N.C. 483, 450 S.E.2d 462 (1994). In *Bunning*, the defendant pled guilty to first-degree murder in Virginia in 1973. The death penalty was not in effect in Virginia at that time, as the Supreme Court of Virginia had held, in *Huggins v. Commonwealth*, 213 Va. 327, 191 S.E.2d 734 (1972), that part of the Virginia statute that allowed the death penalty was unconstitutional. At Bunning's 1992 trial for murder in North Carolina, the 1973 Virginia conviction for murder was used to support the submission of the (e)(2) aggravator. On appeal, this Court reasoned that because defendant could not have received the death penalty for the crime to which he pled guilty in Virginia, he had not pled guilty to a capital felony, and therefore the (e)(2) aggravator was improperly submitted. *Bunning*, 338 N.C. at 493-94, 450 S.E.2d at 467.

Defendant argues that the *Bunning* precedent applies to his case and dictates that because defendant could not have received the death penalty for his 1966 plea of guilty, there was no support for the (e)(2) aggravator in his present case. He further argues the definition of "capital felony" in (e)(2) requires that a particular sentencer could have sentenced the defendant to death after the defendant's conviction and not merely that defendant was convicted of a crime which, under other circumstances, may have been punishable by death. We disagree.

In contrast to the case *sub judice*, in *Bunning* there was not a possibility that the defendant could receive the death penalty under his Virginia conviction, whether he pled guilty or was found guilty by a jury. In the instant case, the death penalty was in place in North Carolina in 1966, and the crime of first-degree murder to which defendant pled guilty was punishable by death, as it is now. When defendant's plea of guilty was accepted by the prosecutor and approved by the trial court, the case itself may have lost its capital nature with respect to punishment; however, his crime remained a capital crime. Had the prosecutor or trial judge refused to accept defendant's tender of a guilty plea, defendant could have received a death sentence or life imprisonment, depending upon the recommendation of the jury. N.C.G.S. § 15-162.1(a) (1965) (repealed 1969).

Defendant additionally argues there was no constitutional death penalty in North Carolina at the time he pled guilty to first-degree murder and, therefore, he could not have pled guilty to a capital felony. Defendant bases this contention on the fact that his guilty plea was entered under section 15-162.1 and in 1969 this statute was inval-

idated because "the Federal Constitution does not permit the establishment of a death penalty applicable only to those defendants who assert their constitutional right to contest their guilt before a jury." *State v. Anderson*, 281 N.C. 261, 267, 188 S.E.2d 336, 340 (1972).

Section 15-162.1(b) provided that, if a defendant's guilty plea was accepted, the defendant would receive a sentence of life imprisonment. *Id.* at 267, 188 S.E.2d at 341. However, at the time, N.C.G.S. § 14-17 required punishment by death upon a conviction for first-degree murder unless the jury recommended life imprisonment. *Id.* Therefore, those who asserted their constitutional right to contest their guilt for first-degree murder and were subsequently convicted risked receiving the death penalty, whereas those whose guilty pleas were accepted did not. This inconsistency was recognized as being unconstitutional by the United States Supreme Court and, consequently, defendants who received death sentences while section 15-162.1 was in effect had their sentences changed to life imprisonment. *Id.* at 266, 188 S.E.2d at 340.

The foregoing notwithstanding, defendant's argument that there was not a constitutional death penalty in this state at the time of his guilty plea is without merit. This Court has observed that decisions that have ruled capital punishment statutes as unconstitutional have "not affect[ed] the validity of a defendant's conviction of a capital crime; [they] merely deprived the Court of the power to impose the death sentence." *State v. Alexander*, 284 N.C. 87, 94, 199 S.E.2d 450, 455 (1973), *cert. denied*, 415 U.S. 927, 39 L. Ed. 2d 484 (1974). Additionally, defendant was not impacted by the invalidation of section 15-162.1, as he did plead guilty to first-degree murder and, therefore, was unaffected by the reasons for the statute's invalidation.

Further, when defendant raised his concerns about the propriety of submitting the (e)(2) aggravating circumstance at trial, the alternative (e)(3) circumstance, prior conviction of a felony involving the use or threat of violence, was suggested by the State. In deciding to submit the (e)(2) circumstance, the trial court primarily relied on this Court's ruling in defendant's prior appeal where we stated, as to this circumstance, that "[a]fter full and cautious deliberation, we conclude that the record fully supports the jury's finding of the aggravating circumstance submitted." *Cummings*, 323 N.C. at 196, 372 S.E.2d at 551.

STATE v. CUMMINGS

[352 N.C. 600 (2000)]

We note that there is little distinction between the (e)(2) and the (e)(3) aggravators. *Warren,* 348 N.C. at 118, 499 S.E.2d at 452. Both circumstances reflect upon a defendant's character as a recidivist and tend to demonstrate that the crime committed was part of a long-term course of violent conduct. *Brown,* 320 N.C. at 224, 358 S.E.2d at 30. The importance of the prior conviction in this case was that defendant had committed a prior murder, not that defendant was eligible for the death penalty.

When defendant pled guilty to first-degree murder in 1966, he pled guilty to a crime that the legislature had classified as a capital felony, a crime for which the possibility of a death sentence then existed. He avoided the possibility of a death sentence by pleading guilty; however, we do not believe it was the legislature's intent to allow defendants who plead guilty to first-degree murder to avoid an aggravating circumstance that would have been applicable had they been found guilty by a jury. As previously discussed, defendant's guilty plea to first-degree murder did not alter the classification of the offense as a capital felony. Therefore, after careful consideration of defendant's current appeal of the submission of the (e)(2) aggravator, we reaffirm our conclusion that the record fully supports the submission and finding of this aggravating circumstance. The trial court properly instructed the jury to consider the (e)(2) aggravator, and this assignment of error is overruled.

[25] In assignment thirty-nine, defendant maintains the trial court erred in its instruction to the jury defining "mitigating circumstance." Although defendant concedes that he made no objection at trial to the instruction given, which we note was quoted from North Carolina criminal pattern jury instruction 150.10, he urges this Court to review the instruction for plain error.

The importance of a timely objection to jury instructions is set out in Rule 10(b)(2) of the Rules of Appellate Procedure, which provides that "[a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection." N.C. R. App. P. 10(b)(2). "The purpose of Rule 10(b)(2) is to encourage the parties to inform the trial court of errors in its instructions so that it can correct the instructions and cure any potential errors before the jury deliberates on the case and thereby eliminate the need for a new trial." *Odom,* 307 N.C. at 660, 300 S.E.2d at 378. As discussed previously in this

opinion, "a question which was not preserved by objection noted at trial . . . may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(c)(4).

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than [the burden] imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.

*State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). In meeting the heavy burden of plain error analysis, a defendant must convince this Court, with support from the record, that the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that absent the error the jury probably would have reached a different verdict. *Fleming*, 350 N.C. at 132, 512 S.E.2d at 736; *see also State v. Davis*, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998), *cert. denied*, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). "[D]efendant *has the burden of showing* . . . (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (emphasis added).

Although defendant alleges plain error in the title of the presentation of assignment of error thirty-nine, he provides no explanation, analysis or specific contention in his brief supporting the bare assertion that the claimed error is so fundamental that justice could not have been done. The right and requirement to specifically and distinctly contend an error amounts to plain error does not obviate the requirement that a party provide argument supporting the contention that the trial court's instruction amounted to plain error, as required by subsections (a) and (b)(5) of Rule 28. N.C. R. App. P. 28(a), (b)(5). To hold otherwise would negate those requirements, as well as those in Rule 10(b)(2). *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

Defendant's empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule. By simply relying on the use of the words "plain error" as the extent of his argument in support of plain error, defendant has effectively failed to argue plain error and has thereby waived appellate review. *See* N.C. R. App. P. 10(c)(4); *State v. Braxton*, 352 N.C. 158, 196, 531 S.E.2d 428, 450-51 (2000); *State v. Call*, 349 N.C. 382, 415, 508 S.E.2d 496, 516 (1998). Accordingly, we hold that defendant has waived appellate review of this assignment of error, and it is dismissed.

[26] Defendant next maintains the trial court committed plain error in its instruction to the jury describing defendant's burden of proof as to the existence of any mitigating circumstances. The instruction given has previously been held to be proper, and defendant concedes that his argument has previously been rejected by this Court in *State v. Payne*, 337 N.C. 505, 533, 448 S.E.2d 93, 109 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995). Defendant has not cited any new arguments supporting reconsideration of this issue, and this assignment of error is therefore overruled.

[27] Defendant's complaint under assignment of error forty-one concerns the trial court's manner of instructing on the mitigating circumstance provided by section 15A-2000(f)(2), which reads: "(2) [t]he capital felony was committed while the defendant was under the influence of mental or emotional disturbance." N.C.G.S. § 15A-2000(f)(2). In the jury instruction given, the trial court said:

It is your duty to consider the following mitigating circumstances and any others which you find from the evidence:

Number 1: Consider whether this murder was committed while the defendant was under the influence of a mental or emotional disturbance.

A defendant is under such influence if he is in any way affected or influenced by a mental or emotional disturbance at the time he kills.

You would find this mitigating circumstance if you find that the defendant had borderline intelligence, suffered from the mental disorder of alcohol dependence, suffered from the mental order [sic] of cognitive disorder, and that as a result, the defendant was under the influence of a mental or emotional disturbance when he killed the victim.

Defendant contends this instruction improperly limited the scope of the circumstance by "lumping together" in the conjunctive the potential bases for finding the circumstance. Defense witness Dr. Hattem testified that defendant was under the influence of three mental disorders at the time of the crime: borderline intelligence, alcohol dependence, and cognitive disorder. Defendant maintains that because of the way the instruction was worded, if a juror rejected any one of these diagnoses, he or she would reject the mitigating circumstance completely.

At the outset, we must again discuss the standard of review applicable to defendant's assignment of error. Defendant concedes that he did not object to the trial court's instructions on (f)(2). In fact, the record shows that before giving the instruction to the jury, the trial court read the instructions to the parties, and defendant specifically stated that he had *no* objection to the wording given. However, in spite of his agreement to the suggested instructions, defendant now submits this issue should not be reviewed for plain error, but rather should be reviewed under the constitutional error standard as set forth in N.C.G.S. § 15A-1443(b). As support, defendant cites this Court's holding that when a trial judge fails to submit a statutory mitigating circumstance supported by the evidence, the constitutional error standard of review applies. *State v. Mahaley*, 332 N.C. 583, 598, 423 S.E.2d 58, 67 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995). Defendant contends that because the trial court submitted a circumstance that was more restrictive than the circumstance set out in section 15A-2000(f)(2), the trial court effectively precluded consideration of the mitigating circumstance. We disagree.

Defendant's claim of error does not relate to a question of submission of the (f)(2) circumstance, as was the case in *Mahaley*, but rather relates to the wording of the instruction as it was given. This Court has consistently reviewed claims of improper wording of mitigating circumstance instructions which were not objected to at trial under the plain error standard. *See Steen*, 352 N.C. at 269, 536 S.E.2d at 25; *State v. Hedgepeth*, 350 N.C. 776, 788, 517 S.E.2d 605, 613 (1999), *cert. denied*, —— U.S. ——, 146 L. Ed. 2d 223 (2000); *State v. Trull*, 349 N.C. 428, 455, 509 S.E.2d 178, 196 (1998), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999). Accordingly, defendant's assignment of error is reviewed for plain error only.

[28] In reviewing the record to determine the validity of defendant's assertion that he was prejudiced by the wording of the trial court's instruction on the (f)(2) mitigator, we note that the three disorders

defendant maintains were improperly lumped together as part of the instruction were also submitted individually to the jury. The three disorders included in the instruction for the (f)(2) mitigator, submitted as statutory mitigating circumstance number one, were borderline intelligence, alcohol dependence and cognitive disorder. In nonstatutory mitigating circumstance number seven, the jury unanimously found that the fact that defendant was an alcoholic when the offense was committed either did not exist or did not have mitigating value. In nonstatutory mitigating circumstance number sixteen, the jury unanimously found that the fact that defendant has a full scale IQ of 74, which falls in the borderline range of intellectual functioning, either did not exist or did not have mitigating value. As to the claim of a cognitive disorder, a number of the nonstatutory mitigating circumstances submitted relate to cognitive disorders, and the jury unanimously found either that none of them existed or that none had mitigating value. These include circumstances four (while attending school, defendant was held back three different times), five (defendant dropped out of school in the sixth grade), fifteen (cognitive disorder and borderline intellectual functioning cannot be treated successfully), seventeen (subject to be easily influenced by others), and eighteen (subject to being victimized and/or harassed by others because of his low intelligence). Additionally, the (f)(6) statutory mitigating circumstance, "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired," specifically relates to cognitive disorder and was submitted to and not found by the jury. There were, in fact, nineteen mitigating circumstances submitted to the jury in this case and none of the nineteen were found to exist, or to have value in the case of the nonstatutory circumstances, by the jury. Of relevance to this particular assignment of error, however, is the fact that none of the mitigating circumstances representing or relating to the same circumstances defendant claims were inappropriately "lumped together" as part of the (f)(2) mitigator were found individually.

Further, we note that the disorders included together in the instruction given for the (f)(2) circumstance were not connected by any conjunctive wording. Therefore, defendant's argument that the jury was confused by the conjunctive linking of the disorders supporting the (f)(2) mitigator is without merit. Defendant has not shown that absent the error, the jury probably would have reached a different result in this resentencing proceeding, and this assignment of error is overruled.

**[29]** In numbering the assignments of error, defendant did not use number forty-two. Therefore, we now review assignment of error forty-three in which defendant contends the trial court erred in denying his request for a peremptory instruction on the statutory mitigating circumstance that the capital felony was committed while defendant was under the influence of mental or emotional disturbance, as set forth in N.C.G.S. § 15A-2000(f)(2). In a related assignment of error, number forty-five, defendant contends the trial court also erred in denying defendant's request for a peremptory instruction on the statutory mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, as set forth in N.C.G.S. § 15A-2000(f)(6). Defendant asserts that he presented plenary evidence of his borderline intelligence, alcohol dependence and cognitive disorder, all of which was sufficient to support a peremptory instruction on these mitigators.

> If requested, a trial court should give a peremptory instruction for any statutory or nonstatutory circumstance that is supported by uncontroverted and manifestly credible evidence. If the evidence supporting the circumstance is controverted or is not manifestly credible, the trial court should not give the peremptory instruction. The trial court's refusal to give the peremptory instruction does not prevent defendant from presenting, or the jury from considering, any evidence in support of the mitigating circumstance.

*Bishop*, 343 N.C. at 557, 472 S.E.2d at 863.

In the instant case, defendant's evidence supporting the (f)(2) and (f)(6) mitigating circumstances was in fact controverted. The State offered into evidence a forensic psychiatric evaluation done by Dr. Eugene Douglas. Contrary to conclusions reached by defense witness Dr. Hattem, Dr. Douglas concluded there was no evidence that defendant was under the influence of an emotional or mental disturbance or that defendant would not be able to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time he committed the murder in this case. The doctor also concluded that defendant's alcoholism did not constitute diminished capacity or impairment in his ability to conform his conduct to the requirements of the law. The fact that Dr. Douglas' evaluation was performed two months after the murder was committed, whereas the evaluation done by defendant's expert was performed eleven years after the murder, was also raised as to the value of each

evaluation. Because we conclude that the evidence as to the (f)(2) and (f)(6) mitigating circumstances was controverted, we overrule assignments of error forty-three and forty-five.

[30] Under assignment of error forty-four, defendant contends the trial court's submission of the statutory mitigating circumstance specified in section 15A-2000(f)(6), "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired," improperly excluded mitigating evidence of borderline intellectual functioning, cognitive disorder or alcohol dependence from the scope of the circumstance. Defendant argues the trial court limited the jury's consideration of this circumstance to whether the defendant had drunk a fifth of liquor and, if he had, whether it impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. For the reasons stated in our discussion of assignment forty-one, where defendant assigned error to the wording of the (f)(2) instructions given, assignment forty-four, also based on wording of the instructions given, is reviewed for plain error only.

We first note that before the trial court instructed the jury, there was some discussion between the parties on the wording of the instruction in regard to how much alcohol defendant had consumed. However, there was no suggestion that the disorders about which Dr. Hattem had testified should be included as part of the instruction on the (f)(6) circumstance. In fact, defense counsel indicated his concurrence with how the trial court planned to instruct on this circumstance.

We further note that the disorders defendant now claims should have been included as part of the (f)(6) instruction were included in the instruction for the (f)(2) circumstance. For the same reasons we found defendant was not prejudiced by the form of the instruction in the (f)(2) instruction in issue forty-one, we find defendant could not have been prejudiced by the exclusion of defendant's alleged disorders from the (f)(6) instruction. The jury unanimously found that the mitigating circumstances which individually addressed defendant's borderline intellectual functioning, cognitive disorder and alcohol dependence either did not exist or did not have mitigating value. It is illogical to assume that the cumulative consideration of those disorders as part of the (f)(6) mitigating circumstance instruction would have resulted in a different conclusion by the jury. This assignment of error is therefore overruled.

**[31]** Defendant next maintains, in assignment forty-six, that the trial court committed reversible error by instructing the jury that it could reject proffered nonstatutory mitigating circumstances on the ground that the circumstances had no mitigating value. This argument has previously been rejected by this Court. *See State v. Womble*, 343 N.C. 667, 694, 473 S.E.2d 291, 307 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719 (1997); *State v. Hill*, 331 N.C. 387, 418, 417 S.E.2d 765, 780 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). Defendant offers no basis for this Court to reconsider this question. This assignment of error is therefore overruled.

**[32]** Next, defendant contends the trial court erred in denying defendant's request for peremptory instruction on two nonstatutory mitigating circumstances: (1) that defendant is subject to being easily influenced by others, and (2) that defendant is subject to being victimized and/or harassed by others because of his low intelligence. Defendant raises these arguments in issues forty-seven and forty-eight, respectively.

This Court has repeatedly held that " 'a trial court should, if requested, give a peremptory instruction for any mitigating circumstance, whether statutory or nonstatutory, if it is supported by uncontroverted and manifestly credible evidence.' " *Richmond*, 347 N.C. at 440, 495 S.E.2d at 692 (quoting *State v. McLaughlin*, 341 N.C. 426, 449, 462 S.E.2d 1, 13 (1995), *cert. denied*, 516 U.S. 1133, 133 L. Ed. 2d 879 (1996)). Conversely, if the evidence in support of the mitigating circumstance is controverted, a peremptory instruction is not required. *Womble*, 343 N.C. at 683, 473 S.E.2d at 300.

In the instant case, defendant has failed to provide any citation to the record establishing the introduction of any evidence that suggests defendant is easily influenced or victimized by others. We will assume that such evidence exists since the trial court did submit these two circumstances for the jury's consideration; however, any such evidence was not uncontroverted. Defendant was the one who first suggested the murder in this case to his two cohorts, and defendant devised the plan to try to lure the victim out of his house. This evidence portrays defendant as a leader, not as a follower. Defendant's own testimony about his many assaultive episodes in prison also did not show him to be a victim, but rather as someone who is assertive and quite willing to use violence to handle problems with other inmates. After a complete review of the record, we conclude the evidence of these two nonstatutory mitigating circumstances was, in

fact, controverted. The trial court did not err in denying to give peremptory instructions on these mitigators, and these assignments of error are overruled.

[33] In assignments forty-nine through fifty-five, defendant contends the trial court erred in denying defendant's request to submit separately seven nonstatutory mitigating circumstances which he requested in writing. In total, defendant requested one statutory mitigating circumstance and twenty-three nonstatutory mitigating circumstances. At the close of evidence, a charge conference was held during which the trial court indicated it would combine several of defendant's separate requests that were duplicative or subsumed within other circumstances. As a result, the jury was instructed on three statutory mitigating circumstances, two of which were identified as necessary through the initiative of the trial court and included the (f)(9) catchall instruction, and sixteen nonstatutory mitigating circumstances.

The trial court in a capital sentencing proceeding must submit for consideration by the jury a nonstatutory mitigating circumstance which the defendant requests if the circumstance " 'is one which the jury could reasonably find had mitigating value, and . . . there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury.' " *State v. Roseboro*, 351 N.C. 536, 551, 528 S.E.2d 1, 11 (2000) (quoting *State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988)). However, "the refusal of the trial court to submit the proposed mitigating circumstance is not error when the proposed circumstance is subsumed in the other mitigating circumstances submitted to the jury." *Id.* at 552, 528 S.E.2d at 11; *see also Richmond*, 347 N.C. at 438, 495 S.E.2d at 691.

Of defendant's seven assignments of error resulting from the trial court's refusal to submit requested nonstatutory circumstances, one resulted from defendant's own agreement to the duplicative nature of an instruction. In his request for mitigating instructions, defendant included six separate requests that dealt with alcohol or alcohol dependence. Three were submitted to the jury as requested; two were combined and submitted as part of the statutory (f)(2) mitigator, to be discussed below; and one was eliminated as duplicative.

As part of the six requests dealing with alcohol dependence, defendant requested instruction that "because of his excessive drinking [defendant] became an alcoholic" and the instruction that "[defendant] was an alcoholic when this offense was committed."

Defense counsel conceded at the charge conference that these two instructions were "duplicitous." Therefore, because these two requests were admittedly duplicative, the trial court did not err in refusing to submit them separately.

As to the other six nonstatutory circumstances that were requested and denied, we first note that defendant's entire request for mitigating circumstances included only one statutory mitigator, N.C.G.S. § 15A-2000(f)(6): that "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired." The trial court recognized, however, that there was some evidence produced to support the (f)(2) statutory circumstance that "defendant was under the influence of a mental or emotional disturbance," N.C.G.S. § 15A-2000(f)(2), and that it would be error not to submit that mitigating circumstance. *See State v. Wilson*, 322 N.C. 117, 144-45, 367 S.E.2d 589, 605 (1988). The trial court also recognized that six of the nonstatutory mitigating circumstances requested by defendant were all aspects of the (f)(2) mitigator. As submitted by defendant, these were worded as follows: defendant suffers from the mental disorder of alcohol dependence, psychological testing reveals that defendant has borderline intelligence, defendant suffers from the mental disorder of borderline intellectual functioning, defendant suffers from the mental disorder of cognitive disorder, defendant's mental disorder of borderline intelligence combined with his drinking at the time the offense occurred rendered him incapable of thinking logically or rationally, and defendant suffers from a cognitive disorder which limits his ability to plan ahead. These requests all dealt with defendant's alleged mental disorders of borderline intelligence, alcohol dependence and cognitive disorder. The jury instruction given by the trial court for the (f)(2) mitigator specifically identified the mitigating evidence defendant relied on in the six nonstatutory circumstances requested, including language regarding borderline intelligence, alcohol dependence and cognitive disorder. Therefore, the trial court properly held that these six requests were subsumed within the (f)(2) mitigating circumstance.

In addition to the (f)(2) circumstance, other submitted mitigating circumstances allowed the jury to further consider all of the evidence relating to defendant's borderline intelligence, alcohol dependence and cognitive disorder. The trial court submitted the nonstatutory mitigators that defendant's cognitive disorder and borderline intellectual functioning cannot be treated successfully and that defendant

has a full scale IQ of 74, which falls in the borderline range of intellectual functioning. Based on all of the statutory and nonstatutory mitigating circumstances submitted to the jury in this case, it is clear that the jury was not prevented from considering any potential mitigating evidence. In addition, the jury was always free to consider any evidence offered under the (f)(9) catchall mitigating circumstance and to give the evidence mitigating value. *See State v. Bonnett*, 348 N.C. 417, 446, 502 S.E.2d 563, 582 (1998), *cert. denied*, 525 U.S. 1124, 142 L. Ed. 2d 907 (1999); *McLaughlin*, 341 N.C. at 448, 462 S.E.2d at 12-13. The trial court did not err by refusing to submit the requested nonstatutory mitigating circumstances separately because, viewed contextually, the full substance of all the requested circumstances was subsumed into the circumstances which were submitted. These assignments of error are overruled.

Defendant raises four additional issues which he concedes have been previously decided contrary to his position by this Court: (1) in two assignments of error, defendant contends the trial court erred when instructing the jury on verdict sheet issues three and four that it "may" consider mitigating circumstances that it found to exist in issue two; (2) in one assignment of error, defendant contends the trial court erred by failing to instruct the jury on the effect of a nonunanimous verdict; and (3) defendant contends the trial court erred in its instruction in response to the jury's inquiry concerning parole eligibility. Defendant raises these issues for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for possible further judicial review of this case. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

In the record on appeal, defendant numbered two assignments of error as assignment "sixty." However, defendant briefed only one of these assignments of error. Therefore, pursuant to Rule of Appellate Procedure 10(c)(4), the assignment of error which was not briefed by defendant—that the jury's failure to consider the (f)(6) mitigating circumstance violated defendant's constitutional rights—has been waived.

[34] In assignment of error sixty that was briefed and in assignment of error seventy-seven, defendant contends that because the jury did not find evidence of two of the statutory mitigating circumstances which were submitted, the jury's sentencing decision was "unconsti-

tutionally arbitrary." Defendant assigns error to the jury's failure to find (i) this murder was committed while the defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); and (ii) the catchall, N.C.G.S. § 15A-2000(f)(9).

Defendant does not contend the jury instructions given by the trial court regarding the statutory mitigating circumstances were in error. With regard to the (f)(2) mitigator, defendant bases his contention that the verdict was arbitrary simply on the grounds that the jury disregarded the testimony of his experts. However, defendant overlooks the fact that the State introduced evidence which directly controverted defendant's experts, through the testimony of Dr. Douglas, who concluded there was no evidence that defendant was under the influence of an emotional or mental disturbance at the time he committed the murder. Notwithstanding this contradicting evidence, when mitigating evidence is truly uncontradicted, at most, the defendant is entitled to a peremptory instruction, and even then, the jury may reject the evidence and not find the circumstance. *Conner*, 345 N.C. at 330, 480 S.E.2d at 630. "[E]ven where all of the evidence supports a finding that the mitigating circumstance exists . . . , the jury may nonetheless reject the evidence and not find the fact at issue if it does not believe the evidence." *State v. Alston*, 341 N.C. 198, 256, 461 S.E.2d 687, 719-20 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996).

With regard to the fact that the jury did not find the "catchall" circumstance to exist or to have value, the trial court properly instructed the jurors to "consider any other circumstance or circumstances arising from the evidence which [they] deem[ed] to have mitigating value." In the absence of contradictory evidence, we must assume the jury comprehended the trial court's instructions. *State v. Bond*, 345 N.C. 1, 28-29, 478 S.E.2d 163, 177 (1996), *cert. denied*, 521 U.S. 1124, 138 L. Ed. 2d 1022 (1997). There was no evidence in this case suggesting the jury did not comprehend the instructions given. Defendant's assignments of error sixty and seventy-seven are overruled.

[35] In assignments of error sixty-one through seventy-six, defendant individually addresses the sixteen nonstatutory mitigating circumstances submitted to the jury and contends that because the jury did not find evidence of any of these circumstances, the jury's sentencing decision was "unconstitutionally arbitrary." Defendant does not contend the jury instructions given by the trial court regarding the nonstatutory mitigating circumstances were not consistent with

the approved pattern jury instructions of this state. He does, however, contend that the instructions given violate his Eighth Amendment rights in that the jury was instructed that it could reject nonstatutory mitigating circumstances, even if factually supported, because the jury did not deem the circumstance to have mitigating value. This Court has reviewed and consistently upheld the constitutionality of a jury rejecting a nonstatutory mitigating circumstance if none of the jurors find facts supporting the circumstance *or* if none of the jurors deem the circumstance to have mitigating value. *See State v. Golphin*, 352 N.C. 364, 483, 533 S.E.2d 168, 245 (2000); *Lawrence*, 352 N.C. at 31, 530 S.E.2d at 826; *Basden*, 339 N.C. at 304, 451 S.E.2d at 247; *State v. Green*, 336 N.C. 142, 173, 443 S.E.2d 14, 32, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994). In the instant case, four of the nonstatutory mitigating circumstances submitted and not found dealt with defendant's childhood. Defendant was forty-six years old at the time he committed the crimes in this case. A jury could rationally have found that the circumstances of defendant's childhood did not influence his violent criminal activity at the age of forty-six, and therefore, they were not mitigating. Two other mitigating circumstances dealt with defendant's alcoholism. However, there was ample evidence presented at resentencing that defendant exhibited violent tendencies, while in prison for example, even when he was not drinking. Several mitigating circumstances addressed defendant's regular participation in prison church activities. Again, however, this evidence was contradicted by defendant's violent acts in and out of prison. In the instant case, the jury could rationally have concluded, on the basis of the evidence, that all submitted nonstatutory circumstances had no mitigating value. These assignments of error are without merit and are, therefore, overruled.

## PROPORTIONALITY REVIEW

[36] In defendant's final two assignments of error, he contends the jury's failure to find any mitigation in this case demonstrates the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factors and that the sentence of death in this case was disproportionate to other first-degree murder cases. We are required by section 15A-2000(d)(2) to review the record and determine: (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and (iii) whether the death sentence is "excessive or disproportionate to the penalty

imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2); *see also McCollum,* 334 N.C. at 239, 433 S.E.2d at 161. After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's finding of the aggravating circumstance submitted—that defendant had been previously convicted of another capital felony—was supported by the evidence and that the evidence which could be considered supportive of mitigating circumstances was controverted. We conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. We therefore turn to our final statutory duty of proportionality review.

In the present case, defendant was resentenced to death for his 6 October 1988 conviction for first-degree murder under the theory of premeditation and deliberation. Following the capital resentencing proceeding, the jury found the one submitted aggravating circumstance, that defendant had been previously convicted of another capital felony, as set out in section 15A-2000(e)(2). The trial court submitted three statutory mitigating circumstances to the jury, including the "catchall" statutory mitigating circumstance, N.C.G.S. § 15A-2000(f)(9), and sixteen nonstatutory mitigating circumstances. However, the jury did not find any of the submitted statutory mitigating circumstances to exist or any of the submitted nonstatutory mitigating circumstances to exist and to have mitigating value.

One purpose of our proportionality review is to "eliminate the possibility that a sentence of death was imposed by the action of an aberrant jury." *State v. Lee,* 335 N.C. 244, 294, 439 S.E.2d 547, 573, *cert. denied,* 513 U.S. 891, 130 L. Ed. 2d 162 (1994). Another is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield,* 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). In conducting proportionality review, we compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *McCollum,* 334 N.C. at 240, 433 S.E.2d at 162.

This Court has found the death penalty disproportionate in seven cases: *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines,* 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver,* 321 N.C. 570, 364

S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); and *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate. First, the jury convicted defendant under the theory of premeditation and deliberation. This Court has stated that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis,* 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). Also, the murder in this case was committed in the victim's home. A murder occurring inside the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken by the . . . invasion of an especially private place, one in which a person has a right to feel secure." *Brown,* 320 N.C. at 231, 358 S.E.2d at 34, *quoted in State v. Adams,* 347 N.C. 48, 77, 490 S.E.2d 220, 236 (1997), *cert. denied,* 522 U.S. 1096, 139 L. Ed. 2d 878 (1998). Further, this Court has never found the sentence of death disproportionate where the defendant has been previously convicted of a capital felony. *See State v. Smith,* 352 N.C. 531, 532 S.E.2d 773 (2000); *Braxton,* 352 N.C. 158, 531 S.E.2d 428; *Warren,* 348 N.C. 80, 499 S.E.2d 431; *Flowers,* 347 N.C. 1, 489 S.E.2d 391. In fact, of the cases in which this Court has found the death penalty disproportionate, "none involved a defendant with any prior convictions for violent felonies." *Flowers,* 347 N.C. at 45, 489 S.E.2d at 417.

In four of the seven cases which this Court has found to be disproportionate, the defendant had no prior criminal record. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517; *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713; *State v. Young,* 312 N.C. 669, 325 S.E.2d 181; *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163. In the other three cases, the defendant had no prior violent felony convictions. *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653; *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170; *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703. In the present case, defendant has numerous previous convictions, including first-degree murder of his uncle, larceny, two counts of auto larceny, breaking and entering, several escapes from prison, and three counts of driving under the influence. Defendant also testified about several incidents of extreme violence with other prison inmates. Defendant's criminal history, riddled with serious violent offenses, is very dissimilar to the criminal history of the defendants for whom this Court has found the death sentence disproportionate.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although this Court reviews all of the cases in the pool when engaging in our duty of proportionality review, we have repeatedly stated that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say here that we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate or to those in which juries have consistently returned recommendations of life imprisonment.

Finally, this Court has noted that similarity of cases is not the last word on the subject of proportionality. *State v. Daniels*, 337 N.C. 243, 287, 446 S.E.2d 298, 325 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). Similarity "merely serves as an initial point of inquiry." *Id.* Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *Green*, 336 N.C. at 198, 443 S.E.2d at 47. Based on the foregoing and the entire record in this case, we cannot conclude as a matter of law that the sentence of death was excessive or disproportionate. We hold that defendant received a fair capital resentencing proceeding, free of prejudicial error.

NO ERROR.