STATE OF NORTH CAROLINA
v.
LAMONT BERNARD BYRD
No. COA08-636
Court of Appeals of North Carolina
Filed April 7, 2009
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.
Joseph L. Ledford for defendant-appellant.
ROBERT C. HUNTER, Judge.
Lamont Bernard Byrd ("defendant") appeals from judgment entered 31 January 2008 after a jury found him to be guilty of three counts of robbery with a dangerous weapon. After careful review, we find no error.
Evidence from trial establishes the following factual background. On 5 December 2005, Ricky Hall lived at 600 Flow Drive in Charlotte with his wife, Jennifer, his seven-year-old son, Ricky, Jr. ("R.J."), and his one-year old son, Devon. On this date, Mr. Hall was at home with his two sons and two of his friends, Daniel Sullivan and Rudy. Jennifer was at work until approximately 10:00 p.m. Jennifer's cousin Ladine Louallen ("Gaybe") and defendant came to the Hall residence around 7:00 or 7:30 p.m. and stayed for approximately ten minutes. During the visit, R.J. came into the kitchen and saw Gaybe and defendant.
Approximately twenty to thirty minutes later, Gaybe's brother (also Jennifer's cousin), Rasheed Louallen ("Fats"), rang the doorbell. Mr. Hall answered the door, and four black males followed Fats in the house. Mr. Hall testified that three of the men had guns, but Fats did not. The men pushed Mr. Hall and his friends onto the floor in the kitchen and put a hat over Mr. Hall's head so he could not see anything. Mr. Hall was holding onto Devon while on the floor. Someone hit Mr. Hall on the side of his head with a gun, and asked where the money was. The men searched the pockets of the victims and took Mr. Hall's wallet. Mr. Hall heard someone ask R.J. for Mr. Hall's keys and then go onto the patio. A few minutes later, the men came back inside and then left. The robbers stole several electronic items after ransacking the house.
A few days after the robbery, Mr. Hall identified defendant as one of the robbers; however, at trial, he was not sure. Although Mr. Hall recognized defendant as the man that had come to his house earlier with Gaybe, he could not identify defendant as one of the men that robbed his home. According to Mr. Hall, his earlier identification was based on R.J. telling him that "the dude that came by with Gaybe earlier came back."
R.J. also witnessed the robbery. According to R.J., when the men first came in, "they asked who was Rick," meaning R.J.'s dad. R.J. testified that defendant was the only robber with a gun. The robbers made R.J.'s father lie down on the floor and put a hat over his father's head, but they did not cover R.J.'s face. One of the men asked R.J. where his father's truck was. They went onto the porch, then came back inside, and hit his father on the head with a gun. According to R.J., the men's faces were uncovered for ten minutes, the lights were on in the house, and he was able to see the men's faces in the light.
R.J. recognized two of the men that robbed his house. One of the men was his mother's cousin, Fats. R.J. identified another robber as the man who had been to his house earlier with Gaybe. R.J. knew Gaybe, but, at the time, did not know the name of the man who was with Gaybe. However, R.J. testified that he recognized the man's face and clothing. He was able to see the man's face when he came downstairs earlier to get a drink. At trial, R.J. identified this man as defendant.
On the day after the robbery, R.J. told his mother that he recognized one of the robbers as the man who had been at the house earlier that day with Gaybe. R.J. also talked to a police officer after the incident, and both his mother and the police officer told R.J. defendant's name. R.J. testified that, on the day after the robbery, an attorney showed R.J. a picture of defendant, and R.J. identified defendant.
Two alibi witnesses testified that they were with defendant at the time of the robbery. Ladine Louallen ("Gaybe"), defendant's girlfriend at the time, testified she met up with defendant around 6:00 p.m. on 5 December 2005. The two rode around and then went to Mr. Hall's house around 8:30 p.m. to buy marijuana. Gaybe testified that she and defendant bought $10.00 worth of marijuana from Mr. Hall, a claim which Mr. Hall denied. Gaybe and defendant then went back outside and sat in the car, smoking marijuana. Approximately thirty minutes later, Gaybe's brother Fats arrived with a man that she did not know. She saw Fats walk up to the door as she and defendant were leaving.
Gaybe and defendant left to pick up her friend Keisha. They then picked up Brian Belk, defendant's best friend, and the group went to a store. While at the store, Gaybe received a call from Jennifer, who reported that someone had just robbed the Hall residence. At that point, they left and Gaybe dropped defendant off around 9:30 or 9:45 p.m. Mr. Belk also testified, outlining the same general course of events.
On 27 February 2006, defendant was indicted on three counts of robbery with a dangerous weapon for the offenses which occurred on 5 December 2005. On 28 January 2008, the trial court conducted a pretrial hearing on the following pretrial motions filed by defendant: (1) a motion to continue the trial; (2) a pretrial motion to suppress the testimony of R.J.; and (3) a pretrial motion in limine to suppress the in-court identification of defendant by R.J. After finding R.J. to be a competent witness, the trial court denied defendant's pretrial motions regarding R.J.'s testimony and identification. The trial court also denied defendant's motion to continue.
Defendant moved to dismiss the charges at the close of the State's evidence and at the close of all evidence. Both motions were denied. On 29 January 2008, the jury returned verdicts of guilty on all charges. The trial court consolidated the offenses for sentencing and imposed a term of sixty-one to eighty-three months active imprisonment, which was within the presumptive range for defendant's prior record level of II and Class D felony. Defendant appeals.

I.
Defendant first assigns as error the trial court's denial of his motion to continue. Defendant moved to continue the trial because he discovered an error on a form provided to defendant by the State. The form erroneously listed Rasheed Louallen ("Fats") as deceased. At the pretrial hearing, the State acknowledged that the information was incorrect and maintained that the mistake was made inadvertently. The State also explained that it did not intend to call Mr. Louallen. Defense counsel acknowledged that the error was inadvertent and expressly stated that he did not attribute the error to any "ill will" on the part of the State. Nonetheless, defendant requested a continuance because Mr. Louallen was a suspect in the case.
"[A] motion for continuance is ordinarily addressed to the sound discretion of the trial court. In such cases, the trial court's ruling will not be disturbed unless it is manifestly unsupported by reason, which is to say it is so arbitrary that it could not have been the result of a reasoned decision." State v. T.D.R., 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (citations omitted). "However, if the motion to continue is based on a constitutional right, the trial court's ruling thereon presents a question of law that is fully reviewable on appeal." Id. (citations omitted).
We initially note that defendant's motion to continue was not based on a constitutional right. Without citing to any case law or specific constitutional provisions, defendant now suggests that the trial court's denial of the motion violates his general rights to due process and a fair trial. However, defendant raises this argument for the first time on appeal. Because defendant did not raise any constitutional arguments in the trial court, he has waived his ability to raise any constitutional arguments on appeal. State v. Lloyd, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (citation omitted) ("[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal").
We first note that the trial court proposed a solution in denying defendant's motion for a continuance. The trial court stated that it would "make every effort to facilitate making [Mr. Louallen] available to [the defendant] during the course of the trial." After the court rendered its decision, the State explained that it could easily obtain Mr. Louallen's contact information. The trial court thereafter instructed the State to do so. The trial court also instructed defense counsel to prepare a subpoena if necessary and stated that "we'll get the sheriff to help you facilitate that." We conclude that the trial court's ruling and proposed remedy to the situation were the result of a reasoned decision. See T.D.R., 347 N.C. at 503, 495 S.E.2d at 708. From our review of the transcript, it appears that defendant should not have been surprised to learn that the form was in error. It is well-established that "'[t]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate.'" State v. Patterson, 335 N.C. 437, 455-56, 439 S.E.2d 578, 589 (1994) (quoting State v. Payne, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990)). Although defense counsel claimed he was operating under the assumption that Mr. Louallen was deceased, the hearing transcript suggests otherwise. First, defendant himself was aware that Mr. Louallen was alive, as he had seen Mr. Louallen the weekend before the trial. Second, the week before the trial, defense counsel met with the assistant district attorney ("ADA") to discuss trial witnesses, and defense counsel asked if the State would call Mr. Louallen. The ADA responded that the State would not call Mr. Louallen, and neither attorney mentioned his alleged death. This suggests that both attorneys were operating under the assumption that Mr. Louallen was alive. Finally, this case had been pending for nearly two years before it went to trial. Mr. Louallen was originally charged and even shared a first setting with defendant in June 2006. Therefore, defendant would have already had ample opportunity to investigate Mr. Louallen's involvement before the case went to trial, nearly two years after defendant was indicted. Based on the foregoing, we find that defendant had sufficient knowledge that Mr. Louallen was alive, and we therefore conclude that the trial court did not abuse its discretion in denying defendant's motion to continue.
Finally, we note that, as part of his argument on this issue, defendant appears to suggest that the State's error constituted a discovery violation. At the hearing, however, defendant did not argue that the State's error constituted a discovery violation under N.C. Gen. Stat. § 15A-903, nor did the trial court make any findings as to whether the error was a discovery violation. Nonetheless, to the extent that the State's error constituted a discovery violation, the trial court would not necessarily had to have imposed a sanction. Under N.C. Gen. Stat. § 15A-910(a)(2) (2007), a trial court may rectify a discovery violation in a number of ways, including granting a continuance or recess. "Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, are within the trial court's discretion." State v. McCarver, 341 N.C. 364, 383, 462 S.E.2d 25, 35 (1995) (emphasis added) (citations omitted), cert. denied, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). Therefore, rulings made pursuant to N.C. Gen. Stat. § 15A-910(a) are reviewed for an abuse of discretion. State v. Cook, 362 N.C. 285, 294-95, 661 S.E.2d 874, 880 (2008). Because the same standard of review is applied under N.C. Gen. Stat. § 15A-910, our analysis would not change, even assuming, arguendo, that a discovery violation occurred. This assignment of error is overruled.

II.
Defendant presents no argument on his second assignment of error, which pertains to the trial court's denial of his motion to suppress the testimony of R.J. This assignment of error is deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

III.
Defendant's third argument on appeal is that the trial court erred in denying his motion in limine regarding the identification evidence of R.J. While defendant's motion to suppress appears to have concerned R.J.'s overall testimony, his motion in limine appears to concern only R.J.'s identification of defendant as the perpetrator of the robbery. Defendant contends that R.J.'s identification should have been excluded because the pretrial identification procedures were impermissibly suggestive.
However, defendant has failed to properly preserve this issue for appellate review, because he failed to renew his objection at trial when R.J.'s identification evidence was introduced. "A motion in limine is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial." State v. Conaway, 339 N.C. 487, 521, 453 S.E.2d 824, 845-846 (1995) (citations omitted); see also State v. Oglesby, 361 N.C. 550, 648 S.E.2d 819, 821 (2007) (holding that Rule of Evidence 103(a)(2), which does not require renewal, is invalid to the extent it conflicts with Rule of Appellate Procedure 10(b)(1)). Instead, a defendant is "required to interpose at least a general objection to the evidence at the time it is offered." Conaway, 339 N.C. at 521, 453 S.E.2d at 846.
Having found that defendant failed to properly preserve this issue for appeal, we next determine whether the issue is reviewable for plain error. See Conaway, 339 N.C. at 521, 453 S.E.2d at 846. The assignment of plain error is governed by N.C.R. App. P. 10(c)(4), which provides the following:
In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.
Thus, N.C.R. App. P. 10(c)(4) requires a defendant to assert plain error in his assignments of error to properly preserve the issue for appellate review. State v. Truesdale, 340 N.C. 229, 232, 456 S.E.2d 299, 301 (1995). Moreover, Appellate Rule 10(c)(4) requires a defendant to give an explanation, analysis, or specific contention in his brief supporting that the claimed error is so fundamental that justice could not have been done. State v. Cummings, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000), cert. denied, 532 U.S. 997, 149 S.E.2d 641 (2001). Failure to do so also waives appellate review. Id. at 637, 536 S.E.2d at 61.
Defendant has neither asserted plain error in his assignments of error, nor has he properly presented a plain error argument in his brief. At the conclusion of his argument that R.J.'s identification should be excluded as impermissibly suggestive, defendant concedes that he failed to renew his objection at trial and claims that "it was plain error for the trial court to allow the identifications into evidence, based upon the unusual circumstances that surrounded this . . . ." However, defendant makes no mention of the plain error standard adopted by our Supreme Court in State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Defendant's statement amounts to a bare assertion of plain error and he has therefore failed to preserve a plain error argument for appellate review. See Cummings, 352 N.C. at 637, 536 S.E.2d at 61 ("[b]y simply relying on the use of the words `plain error' as the extent of his argument in support of plain error, defendant has effectively failed to argue plain error and has thereby waived appellate review"). This assignment of error is overruled.

IV.
Defendant's final argument on appeal is that the trial court erred by denying his motion to dismiss at the close of all the evidence. When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." State v. Morgan, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004) (citation omitted), cert. denied, 546 U.S. 830, 163 L. Ed. 2d 79 (2005). A trial court may properly deny a motion to dismiss where "substantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator[.]" Id. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). On appeal, defendant only argues that the State's evidence was insufficient to establish that he was the perpetrator of the crimes. Therefore, we will only discuss the sufficiency of the State's identity evidence.
Defendant essentially argues that R.J.'s testimony cannot be relied upon to establish identity because R.J. was not credible. As a basis for this argument, defendant relies on R.J.'s age at the time of the robbery and the circumstances under which R.J. came to identify defendant after the incident. Defendant ultimately argues that R.J.'s credibility issues, taken with Mr. Hall's inability to identify defendant and other inconsistencies in the evidence, lead to the conclusion that the State's evidence was not sufficient to establish defendant as the perpetrator of the robbery.
The evidence at trial establishes that R.J. recognized one of the robbers as the man who had been at his house earlier with Gaybe, even though R.J. did not know the man's name at the time. R.J. then identified this man as defendant in open court. This evidence was sufficient on the issue of identity to survive defendant's motion to dismiss. To the extent that defendant contends R.J. was incredible due to his age, we note the trial court found R.J. to be of sufficient age and understanding to serve as a competent witness after conducting a voir dire. We also note that defendant withdrew his assignment of error related to R.J.'s competency. Thus, all of the credibility issues defendant raises are questions for the jury, not this Court, to decide. It is well-established that "[a]lleged contradictions or issues of credibility are for [the] jury to resolve and do not warrant dismissal." State v. Brown, 177 N.C. App. 177, 187, 628 S.E.2d 787, 793 (2006) (citation omitted). Accordingly, we find that the trial court did not err in denying defendant's motions to dismiss.
No error.
Judges McGEE and JACKSON concur.
Report per Rule 30(e).